Porter et al. vs. Sandidge.

## No. 6288.

### Wm. S. Porter et al. vs. John M. Sandidge.

Where a debtor takes out a life policy payable to his creditor, who binds himself to pay over to the debtor's heirs any excess collected on the policy over the sum due him, the creditor will not be heard to deny his obligation to pay over such excess collected by him.

Parol evidence is not admissible to prove that such debtor agreed with the creditor, that the debts of a third person should also be paid out of the proceeds of such policy.

Mere reference in a letter to a previous contract between parties, should not be taken as changing or abrogating any of its terms, unless that intent results clearly ; but when a dispute arises as to the scope of a previous verbal agreement, such letter ought justly to have great weight, more especially when the reference is not merely casual, but constitutes the sole matter of the letter.

The action of the acceptor of a draft against the drawer, is one of indemnity and does not arise until the former has paid it.

A PPEAL from the Fifth District Court, parish of Orleans. *Cullom,* J.

---

Wm. S. Benedict and Joseph P. Hornor for the plaintiffs and appellants :

First—When a debtor insures his life for the benefit of his creditor, and the premiums are paid by the creditor, or charged against the debtor, the creditor can collect the insurance policy, but he must pay the balance of such collection over and above the amount of his legal indebtedness due him to the debtor's heirs. Bliss on Life Insurance, p. 505, sec. 324 ; May on Insurance, pp. 8 and 104 ; 1 Bigelow, 665 ; 3 Bigelow, 2, 98, 156, 255 ; Rawle vs. Life Ins. Co., 27 New York, 282.

Second—There being no allegation of fraud or error in the answer, parol evidence cannot be received to contradict, vary, alter, or modify it. 12 An. 739. It is quoted in 1st Hen. p. 534, as follows : "Where no ambiguity exists the document cannot be amended." 16 Martin, 684 ; 6 An. 583 ; 11 An. 380.

It cannot be modified. 5 An. 315.

All parol evidence is inadmissible. 4 An. 44. Nor can further sums be shown to have been paid. 3 Martin, 25 ; 6 Martin, 615.

Third—There is no written evidence in the record to show any agreement to pay interest at the rate of eight per cent, and therefore the interest cannot exceed five per cent. C. C. 1940, 2924 ; 14 An. 681.

Fourth—The defendant cannot charge as against the plaintiff commissions for advances and interest thereon, and also interest on the principal sum. 15 An. 459.

Merrick, Race & Foster for the defendant and appellee :

First—A contract once clearly established in accordance with law has

29

the same binding force and effect whether it is by parol or in writing.. C. C. 1945 (1940).

Second—A letter is always open to examination. Parol proof is admissible to explain a receipt. 5 An. 406, 236 ; 9 R. 240.

Third—In England, where trusts are easily raised and are often upheld' by implication, the law is settled somewhat differently from the doctrine in the major part of the United States, and especially Louisiana, where trusts are prohibited by law and discountenanced by the courts. A New-York court said : "But policies without interest upon lives are more pernicious and dangerous than any other· class of wager policies, because temptations to tamper with life are· more mischievous than incitements to mere pecuniary risks." Ruse vs. Mutual Benefit Life Insurance Co., 23 N. Y. Rep. 526.

This difference between the English law and the American law may be seen by comparing section 324, p. 505, of Bliss, on Life Insurance,. which shows the English law, and pp. 496, 497, section 317, which shows the American law. 1 Bigelow Ins. Rep. 665.

Fourth—The policy of insurances only covered the indebtedness due to the creditor and the insurance company, was not bound for any thing beyond this amount, and Sandidge was not authorized to recover,. and could not recover, any thing more from the company. Bliss on Life Ins., sec. 27, pp. 35, 497, 317 ; 3 Conn. 244; 7 U. S. Dig. 1st series, p. 737, No. 1953 ; 10 An. 814 ; Phillips, 2 vol. No. 1755 ; Reynolds Life Ins. p. 54 ; 6 Gray, 396 ; 23 An. 317, 445 ; 26 An. 326.

Fifth—There is no instance in the books to show that where a man has voluntarily paid eight per cent interest it could be recovered back.

---

The opinion of the court was delivered by

SPENCER, J. Plaintiffs, as heirs of Jacob C. Porter, sue defendant for $10,000, the amount alleged to have been collected by him, from the· Life Association of America, on a policy issued upon the life of Jacob C. Porter. The policy was taken out by Porter, and made payable to John M. Sandidge, in order to secure certain debts due the firm of John M. Sandidge & Co.

It seems that Sandidge & Co. were the factors of J. C. Porter individually, as also of the commercial firm of Porter & Bond, composed of' J. C. Porter and James Bond, and also of Bond individually. In May,. 1870, both Porter and Bond were in New Orleans, and being individually and as partners in arrears to Sandidge & Co., desiring further advances, it was arranged and agreed, that to secure Sandidge & Co. each of said debtors should take out a policy of insurance on his life in favor of Jno. M. Sandidge. This was done, Sandidge & Co. paying the cash part of the premiums on both policies, and charging up the amount so paid to the·

respective parties. Annually thereafter Sandidge & Co. continued to pay these premiums and charge them to the parties for whom they paid. In the latter part of 1873 Porter died, and Sandidge collected the amount due on the policy, i. e. $10,000, less amount of premium notes due the association, and less a small discount and exchange, realizing in cash $8802 86.

At the time of Porter's death, the accounts of Sandidge & Co. stood with the parties as follows:

Amount to debit of J. C. Porter ....................$4,341 28

Amount to debit of Porter & Bond ................. 1,687 01

Amount to debit of Bond........................... 2,253 14

Sandidge claims that under a verbal agreement made at the time of taking out the policies, he has the right to deduct from the amount he received all of the above accounts. Plaintiffs concede that the accounts against Porter and "Porter & Bond," with exception of certain items of interest and commissions, are properly chargeable, but deny liability for the personal debts of Bond. Sandidge also claims credit for one thousand dollars, being the amount of an order given by J. C. Porter to Walmsley & Co. on, and accepted by, him, to be paid out of any sum which he might collect on the policy, deduction being first made of what was due to Sandidge & Co. This last credit is also disputed by plaintiffs. So that this contest narrows itself down to the right of Sandidge to deduct the account against Bond and the order to Walmsley & Co. It is conceded that Sandidge has never paid the Walmsley order, but he is acceptor thereon.

First—In regard to the individual debt of Bond. Defendant's counsel contends, first, that J. C. Porter himself never had any interest or right in or under the policy, and therefore that his heirs have none. That it was issued for the sole benefit of Sandidge, who could alone collect it, and that only to the extent he was a creditor. We think that under the facts of this case Sandidge is estopped from making this defense.

1st. His own testimony shows that the policy was to be taken out by Porter; that Porter was obliged to pay the premiums; that he did give notes for the credit portions thereof; that all cash paid by Sandidge for premiums was charged in general account to Porter, who, from time to time, made remittances.

2d. His own testimony shows that he held the policy only as collateral, and that upon being paid he obligated himself to transfer the policy to Porter, or in the event of the collection of policy by him, to pay over the balance after deducting his own dues.

3d. Under his own signature in writing, as we shall hereafter see, he recognized Porter as the owner, subject to the pledge aforesaid. He

accepted a draft to Walmsley & Co. drawn by Porter against the policy, and in every way recognized his obligation to account for any sum received under the policy.

It is a matter immaterial, and not requiring our decision, whether any other than Sandidge could have collected from the company. He did collect the amount, and is bound by his contract to account therefor.

This brings us back to the question whether Sandidge has the right to withhold from the amount collected the debt due by Bond, and the amount of his Walmsley acceptance?

Brown, a member of the firm of Sandidge & Co., and Bond testify that at the time the arrangement was made for taking out these policies, it was verbally agreed and understood that each policy should stand as security for the debts of Porter and Bond individually, and also for the debts of the firm of Porter & Bond.

The testimony of Sandige himself, who was the chief actor in this matter for his firm, does not fully sustain these witnesses. In one place he says the indebtedness to be covered by the policies was that of the firm, and of Porter and Bond individually. In another he restricts the indebtedness to that of Porter and of the firm. This last statement was made in answer to questions relative to a letter written by him to Porter. The letter is as follows :

" NEW ORLEANS, 7th July, 1870.

" *Mr. Jacob C. Porter :*

"Dear Sir—I have in my possession life policy No. 7096, granted to you 20th May, 1870, by the Life Association of America for the sum of ten thousand dollars for my benefit. This was done to protect me in any amount of money which is now due, or may become due to me or to my business commercial firm in this city by yourself, to whom, or to your heirs or assigns, the same will be transferred at any time by myself, my heirs and assigns, all indebtedness being paid.

" JOHN M. SANDIDGE."

Being asked in what respect that letter omitted to fully state the agreement, he answers, " None that I see." Being asked what the indebtedness was, which was therein spoken of, he replied, " The indebtedness contracted at the beginning, by him individually and Porter & Bond.  *  *  *  That is what my expression means, ' all indebtedness.'"

While it may be true, as contended by defendant's counsel, that mere reference in a letter to a previous contract should not be taken as changing or abrogating any of its terms, unless that intent clearly results, still when a dispute arises as to the scope of a previous verbal agreement, such a letter ought justly to have great weight, more especially when it is manifest that the reference is not merely casual, but constitutes the sole matter of the letter. It is evident that that letter was written

for the purpose of giving Porter a *formal acknowledgment* in writing of his interest in and relation to said policy.

In another letter, dated 30th May, 1873, to Porter, Sandidge says : " I have arranged to carry your life policy into next winter as you requested. Think you act wisely in making an effort to keep it up, and I am glad to be able to assist in it. * * * I cannot carry Capt. Bond's life policy, because he does nothing—paid it last year, which he did not refund, and he will hardly expect me to repeat now." He adds, also, that he sends up a premium note, in blank, to be signed by Porter, etc. It seems that Bond's policy was no longer carried, but was converted into a paid-up policy for $3000, which is held by Sandidge.

Waiving for the present the question as to the admissibility of parol evidence to prove Porter's agreement to subject either himself or his property or estate to the payment of Bond's debt, we think the weight of evidence is against the existence of such an agreement. There are, we think, also some inherent improbabilities in the proposition maintained by defendant. The evidence clearly shows that the intent of the parties was, that each should keep up his own policy at his own expense; that the policy of Porter was his property; that for any advances of premiums by Sandidge, Porter was individually liable and could have been forced to repay them ; that Porter exerted himself to have his policy kept up, though hard pressed. It is hardly probable that he would have been willing to do all this in order to pay Bond's debts, for which he was in no wise liable. *Nemo presumitur donare.*

But we are not prepared to concede the admissibility of parol evidence to establish the alleged agreement. As we have seen, it was an agreement whereby Porter promised that his property or that of his estate should be liable for the debt of a third person to Sandidge. We think proof of such a promise comes fairly within the scope of the prohibition of art. 2278 C. C.

As to the Walmsley acceptance, we need only say that the action of the acceptor against the drawer is one in indemnity, and that it does not arise until the acceptor has paid, and thereby discharged the drawer.

The accounts of Sandidge & Co. with Porter are made up with interest, pro and con, at eight per cent. They were regularly furnished to Porter, who made no objection, thereby acquiescing in them. The charge of two and a half per cent commission should be disallowed. Sandidge should be charged with what he actually received. We state the account as follows :

Sandidge received ............................... $8,802 86.
Porter owed him $4,341 28, less $27 85 commissions $4,313 43
The commercial firm of Porter & Bond owed him  1,687 01—  6,000 44

Balance due Porter .............................. $2,802 42

For this amount, with five per cent interest from 30th January, 1874, the date of its receipt, plaintiff should have judgment.

It is therefore ordered and decreed that the judgment appealed from is annulled and reversed ; and it is now ordered and decreed that plaintiffs do have and recover of the defendant, John M. Sandidge, two thousand eight hundred and two and 42-100 dollars, with legal interest thereon from 30th January, 1874, and all costs.