| | | |
|---|---|---|
| ROZELL McWILLIAMS | : | NO. 8,290 |
| versus | : | COURT OF APPEAL |
| MRS.JOSEPHINE DAWES | : | PARISH OF ORLEANS |

WILLIAM A. BELL, JUDGE:

June 30th, 1922.

June 30/22
Stansbury

BY; WILLIAM A. BELL, JUDGE:

This is a suit to recover brokerage fees
in the sum of One Hundred and Eighty Dollars ($180.00) and the
additional 25% of said amount as attorney's fees, all of which
is claimed under a certain contract entered into between plain-
tiff and defendant on April 30, 1918, whereby plaintiff was
given the exclusive employment as agent, to sell certain real
estate in this city, belonging to defendant.

It is alleged in the petition that the said
written contract of employment stipulated that plaintiff should
be continuously employed as defendant's agent, and should re-
main such until defendant should cancel plaintiff's employment
by written revocation.

It is further alleged that the contract stipu-
lated also that in case the property was sold during the existence
of the contract, that no matter by whom the said property was
sold, the commission of 3% should be due to plaintiff together
with 25% additional as attorney's fees, if suit was brought to
enforce the contract.

It is then alleged that plaintiff advertised
the property for sale, showed it to numerous prospective buyers,
and did all in his power to effect a sale of the property, all
at his own expense, and that while the said contract of employ-
ment was in force, the property of petitioner was sold by her
for the sum of Six Thousand Dollars ($6,000.00) on August 26,
1919, and that petitioner never having revoked the contract made
with plaintiff, there became due to plaintiff under the stipu-
lations aforementioned, a commission of 3% on the said $6,000.00,
or the sum of One Hundred and Eighty Dollars ($180.00), together
with an additional 25% of said amount, attorney's fees, which

petitioner would have to pay for the employment of counsel in bringing this suit.

The petition concludes with the averment that amicable demand was made in vain upon defendant for the payment of the commission as herein sued upon. The prayer is for judgment in the amounts above stated with legal interest on the whole amount claimed from August 26, 1919 until paid. The contract in question was annexed to and made part of the petition

Defendant admits the contract and all of the recitals therein set forth, and that plaintiff was employed by her under said contract, but denies that the contract was never revoked or modified, and also denies that it remained in full force and effect on August 26th, 1919, without modification or revocation.

It is further admitted that the property was sold on the date just mentioned for the price of $6,000.00. Further answering, defendant alleges that on or about August 10th, 1918, while accompanied by a friend, she called at plaintiff's office and finding him absent therefrom, told his representative that she desired to revoke or modify the contract existing between her and the plaintiff, in that she no longer would consent to plaintiff's having the exclusive right to sell her property, but that if he procured a purchaser for her, or made a sale of it, she would pay a commission to him as she would to anyone else who might effect a sale, and that this instruction given to plaintiff's clerk was accepted by the clerk, who said that the matter would be fixed, and that report of defendant's wishes would accordingly be made by her to plaintiff.

Further answering, defendant says that acting under the belief that she had succeeded in revoking or modifying the contract, she placed the property in the hands of another

agent, who subsequently sold it, and to whom she paid the brokerage. It is also alleged by defendant that not hearing from plaintiff until after the sale by the second agent had been consummated, nearly one and a half years since the signing of the contract herein sued upon, and fully one year after its revocation, that she had every reason to believe that plaintiff had acquiesced in the modification or revocation of the contract. The answer concludes with the averment that plaintiff did not effect the sale of her property, nor did he procure a purchaser.

At the trial of this suit in the lower court, testimony was admitted over plaintiff's objection to the effect in substance of what was alleged in defendant's answer, that is, to the verbal revocation of the written contract. The objection as made being overruled, plaintiff reserved a bill of exception, and the matter being before this court, we are of the opinion that the verbal evidence offered by defendant in an attempt to vary or contradict the written contract herein sued upon, was erroneously admitted.

The rule of evidence which properly excludes the testimony admitted in this case is found in the Revised Civil Code, Art. 2276:

> "Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."

This article has been upheld by a long line of decisions, and is further noted under the general rule of evidence in 22 Corpus Juris Verbo:

### VERBAL EVIDENCE.

#### Par. 1459.

> Contracts: (1) General Rule: "The most usual application of the parol evidence rule is with respect to contracts, as to which it is established that in the absence of fraud or mistake parol or intrinsic evidence is not

admissible to vary, add to, modify, or contradict the terms or provisions of the written instrument by showing the intentions of the parties or their real agreement with reference to the subject matter to have been different from what is expressed in the writing; for where the parties have deliberately put their engagements it to writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of their engagement, all previous negotiations and agreements with reference to the subject matter are presumed to have been merged in the written contract, and the whole engagement of the parties and the extent of their undertaking is presumed to have been reduced to writing.

The rule, however, goes even further than this, and it has been established that where the instrument is free from ambiguity and is in itself susceptible of a clear and sensible construction, parol or extrinsic evidence is not admissible even to explain its meaning or determine the construction of the writing." La. - McGuigin v. Boyle, 1 La. A. (Orleans) 164. La. - Weinberger v. Merchants' Ins. Co., 41 La. Ann. 31, 5 S 728. La. - Robinson v. Britton, 137 La. 863, 69 S. 282; Block's Succ., 137 La. 302, 68 S 618; Egan v. Hotel Grunewald Co., 134 La. 740, 64 S.698; Hafner Mfg. Co. v. Lieber Lumber etc. Co., 127 La., 348, 53 S 646; Wells v. Blackman, 121 La. 394, 46 S 437; Murphy v. Hussey, 117 La. 390, 41 S 692; Hebert v. Dupaty, 42 La. Ann. 343, 7 S 580; Porter v. Sandidge, 32 La. Ann. 449; McWilliams v. Reith, 149 La. 298; Ware v. Allen, 128 U.S. 595. (2) Wharton, Evidence 1014.

In the case of Freeman v. Diboll, 11 Orl. App. 199, under conditions quite similar to those now under consideration, this court decided "that the provisions of the contract being clear and unambiguous, parol testimony varying its terms was properly rejected." In this same case the court ruled that additional evidence offered for the purpose of establishing by whose effort the sale of the property had been consummated, was also properly rejected, for the reason that the agency of the plaintiff or real estate broker being shown to be exclusive under the terms of the contract, any other evidence as to other parties having consummated the sale was immaterial. The court ruled in the case just cited as follows:

"Where the contract of a real estate broker confers on him the exclusive agency to sell the property, and negatives the right of the owner to sell or negotiate for its sale, the broker is entitled to his commission if, during the term of the contract, a sale is effected by the owner or by another broker, on the latter's behalf."

A similar ruling was made by this court in the case of Kostmeyer v. Landry, 12 Orl. App. p. 385, and again in the more recent case of Harvey v. Hirsh (unreported) No. 7518 of the docket of this court.

In the last case just cited, the contract sued upon was in part as follows:

"I will notify my agent in writing, and give him ninety days' notice if I desire this contract discontinued − − − when this property is sold, I agree to bind myself to pay my agents all over $4,500 for their commission, no matter by whom the property has been sold."

Interpreting the contract just above quoted, which is in many respects almost identical with the one herein sued upon, we have held that the great weight of authority supports the rule that a stipulation in a real estate broker's contract promising him a compensation, even though a sale of the property be made by the owner himself during the life of the contract, is valid and enforceable, where the broker has used ordinary diligence in endeavoring to make the sale of the property. 9 C.J. p. 575, Par. 74, Note 30 − 31; Futrel v. Reeves, 165 Ky. 282, 176 S.W. 1151.

Further conclusions of this court in the case of Harvey v. Hirsh are as follows:

"It is true that the general jurisprudence is, and this court has itself decided, that in order to entitle a broker to a commission, he must be the procuring cause of the sale. But this rule applies in the absence of a contrary agreement; there is no law that makes a nudum pactum a contract by which the agent shall be entitled to a commission in the case a sale is made through himself or through the owner or through anyone else.

582

Such stipulation is made precisely for the purpose of avoiding the necessity of a law suit to determine through whose agency the sale was consummated."

The law is concisely stated in Corpus Juris as follows:

"As a general rule, a real estate broker who is given an exclusive right to sell property is entitled to a commission on any sale thereof, made by the principal, either independently, or through the efforts of another broker, within the time specified within the contract of employment, although the exclusive agent's efforts did not contribute towards the sale, when the principal himself sells the property without the broker's aid." 9 C.J. p. 622, Par. 101.

We think, as above stated, that the testimony admitted in this case going to show that a verbal revocation of the contract sued upon had been effected, was an erroneous admission, but even though consideration be given to such evidence, there is positive and other evidence in the record to the effect that the plaintiff made frequent efforts to sell the property of defendant, and had several interviews with her and telephone conversations regarding it, subsequent to the alleged sale by the other broker, to whom the defendant, in violation of her contract, delegated additional authority to sell her property.

It further appears that after the plaintiff had testified to these facts just mentioned, that defendant was recalled to the witness stand, and when asked to affirm or deny plaintiff's testimony concerning his transactions with her subsequent to her attempted revocation of the contract, she could not in any manner be positive as to whether or not such conversations or interviews had ever occurred, contenting herself with the statement that she did not remember ever hearing from plaintiff at all, but admitting that she had learned from neighbors that the property had been shown to various prospective purchasers.

We have considered the authorities cited by counsel for defendant, and find them inapplicable to the facts of this case, for the reason that in those cited cases parties to the written contract had entered into a new agreement as to some part of the original contract, and it was rightly ruled that parol evidence could under such conditions be introduced to prove the new agreement.

The facts of the case now under consideration are quite to the contrary, in that the parol evidence offered was for the purpose of proving a revocation of, and not a change in the original contract, and was particularly offered in substantiation of the averments of defendant's answer to the effect that she had attempted a verbal revocation in direct disregard of the specific provision in the original contract that the said contract could not be at any time revoked except by a written notice.

Plaintiff and appellee, in answering the appeal herein taken, prays that the judgment appealed from be affirmed, and that damages for frivolous appeal be allowed herein. We find from the record of this case no ground for damages as herein additionally prayed for, and same is therefore denied.

The judgment herein appealed from is, in our opinion correct, and the same is hereby affirmed, at defendant's cost in both courts.

JUDGMENT AFFIRMED.

June 30th, 1922.

*Judge Claiborne dissents for reasons to be hereafter given.*

ROZELL McWILLIAMS

VS

No. 8290

Mrs. JOSEPHINE DAWES, WID. CALVIN HYATT

JUDGE CLAIBORNE, dissenting.

The defendant testified that she called at plaintiff's office in July or August 1918, and told a young lady occupying a desk in that office and apparently a clerk representing the plaintiff, that she came there to cancel the contract, and that she did not want plaintiff to sell her property except without a contract, and that the clerk answered it was all right. The defendant is corroborated in this testimony by a lady who accompanied the defendant and who heard both the defendant and the clerk.

In her answer to the petition in this case the defendant alleged:

"that on or about the 10th. day of August 1918, accompanied by a friend she called at plaintiff's office, but not finding him at his office, told his representative that she desired either to revoke or modify the contract into which she had entered with the plaintiff; that she wished to revoke the contract or modify it so that he would not have the exclusive right to sell her property; that if he however procured a purchaser for her or made a sale of it she would pay him a commission as she would to any one else who might effect the sale; that the person to whom she spoke, a clerk of the plaintiff, said it was all right and that she would fix it and report to Mr. Mc Williams, what she had said".

Notwithstanding this answer, entering upon more details than is usual and putting plaintiff fully upon his guard and notwithstanding the testimony of the defendant and of her friend, the plaintiff did not produce his clerk as a witness to deny either the allegations of the answer or the testimony of these witnesses. We must therefore presume that plaintiff did not produce his clerk for the reason that she would not have contradicted the testimony of these two ladies. 33 A. 1057, 1073; 144

585

379; 106 La. 591 and authorities; 41 A. 866; 39 A. 426; 38 A. 823, 777 (779); 35 A. 698, 424.

The presumption also is that his clerk communicated to the plaintiff the message she had received from the defendant. The plaintiff however denies it. He also says he never was notified by Mrs. Hyatt of any revocation. Of this. however, there is no claim subsequent to the date when defendant alleges she revoked her procuration, plaintiff testifies he thinks he had one interview with the defendant and several telephone conversations. The defendant denies this.

In commenting upon the testimony of parties in their own behalf, the organ of the Court, in Cole vs Cole, 39 A. 880, quotes the language of the immortal Scottish bard as follows:

"I no say men are villians all,
The real, hardened, wicked,
Who hae nae fear but human law
Are to the few restricted;
But ah! mankind are unco weak
And little to be trusted,
When self the wavering balance shakes,
'Tis rarely right adjusted".

But it is not necessary that knowledge of the revocation should have been communicated by his clerk to the plaintiff, nor was it necessary that the defendant should have notified the plaintiff himself. Notice to the clerk or agent was notice to the principal, and the negligence of the clerk must be visited upon his employer.

It is not necessary to say that while Article C. C. 2276 (2256) prohibits parol evidence against or beyond what is contained in written acts, or on what may have been said before, or at the time of making them, or since, with a view of enforcing or resisting the execution of the original contract, the jurisprudence has always admitted parol testimony to show a subsequent amendment, modification, or abrogation or execution of a written contract, which the law does not require to be in writing. 5 N.S.

586

in writing.

It was decided for the first time in Page vs Nicholson 27 A. 116 that where the contract provided that no extra would be allowed unless executed under written authority, no parol was admissible in aid of a claim for extras.

The rigidity of the rule was relaxed in the Monarch case 49 A. 991 where the syllabus, after affirming the principle of the Page case, concludes:

"it not having been shown that the proprietor agreed to the change".

In Wellman vs Smith 114 La. 228 the Court enforcing a contract in which a similar clause was inserted said on p 231:

"In the case cited (monarch) the testimony did not prove that the owner knew anything about the extra work. It follows that he had not assented to it. Here the work was done. The owner was frequently about the building and saw the improvements as they were made. It is not shown that the least objection was ever made, nor that they have not received full consideration".

Story vs Insurance Co. 37 A. 254 was a suit on a policy which provided that nothing should be construed as a waiver of any printed condition of the policy unless it was endorsed on the policy. Parol testimony was admitted to prove declarations and acts of the Company amounting to a waiver of the policy. The Court admitted the testimony, and said:

"The reason of this ruling does not antagonize the general principle which excludes parol evidence to contradict or alter a written instrument. The effect of the testimony is not to deny the existence, or contradict the true meaning of the written instrument, but simply to show acts of the party to be benefited thereby, manifesting his intention to abandon or waive such benefit".

In St. Landry vs Teutonia Ins. Co. 113 La. 1057 the Court said:

"Objection was made to the admission of parol evidence to prove waiver of proofs of loss, on the ground

587

that the policy provided that all waivers of any of its conditions or stipulations must be in writing. In Story vs Insurance Co. 37 A. 254 it was held that such a clause did not apply to waivers by subsequent agreements, acts, or conduct".

It will thus be seen that according to our own Supreme Court knowledge of the extra work and failure to object, are construed as an assent to it, and a waiver of the notice in writing.

Such is the great weight of authority in other States. 9 C. J. 251, 253; 43 Am. Rep. 382, 390; 67 N. Y. Supp. 177; 37 N. Y. S. 562; 141 N. Y. S. 222; 63 N. W. 479 reason of rule; 74 A. 763; 166 Ills. A. 20; 17 N. Y. S. 351. leases; 76 S. E. 895; 48 L. R. A. N. S. 579, 564; 39 N. W. 76; Bishop on Contracts s 7066; 58 M. E. 335 (339); 53 Atl. 36; 2 L. R. A. 625; 69 Pac. 784; 3 Elliott on Contracts p 6 5 1861; 76 S. E. (W. Va.) 895 (1912); Simpson vs Mann, 48 L. R. A. N. S. 579.

"The written contract, not under seal, provided "that no alterations or additions shall be allowed or paid for unless the same and the cost be agreed to in writing in advance and no change or modification of this contract shall be recognized unless evidenced by an agreement in writing". Oral evidence was given for the purpose of showing that change in the character of the work was ordered in behalf of Mann, and that he agreed to pay for it additional compensation. A brief in the case states that the clause just quoted from the contract constitutes the reason why the Court took the case from the jury. We do not think that the clause justifies that ruling. I quote from Page on Contracts s 1349:

"If the written contract contains an express provision that no change or modification thereof can be made except by writing to be signed by one or both parties, the parties to such contract may, nevertheless modify or abrogate it by subsequent oral agreement, since the oral agreement will operate as a waiver of the terms of the contract inconsistent therewith, including that term which requires subsequent

that the policy provided that all waivers of any of its conditions or stipulations must be in writing. In Story vs Insurance Co. 37 A. 254 it was held that such a clause did not apply to waivers by subsequent agreements, acts, or conduct".

It will thus be seen that according to our own Supreme Court knowledge of the extra work and failure to object, are construed as an assent to it, and a waiver of the notice in writing.

Such is the great weight of authority in other States. 9 C. J. 251, 253; 43 Am. Rep. 382, 390; 67 N. Y. Supp. 177; 37 N. Y. S. 562: 141 N. Y. S. 222; 63 N. W. 479 reason of rule; 74 A. 763; 166 Ills. A. 20; 17 N. Y. S. 351, leases; 76 S. E. 895; 48 L. R. A. N. S. 579, 564; 39 N. W. 76; Bishop on Contracts s 7066; 58 M. E. 335 (339); 53 Atl. 36; 2 L. R. A. 625; 69 Pac. 784; 3 Elliott on Contracts p 6 5 1861; 76 S. E. (W. Va.) 895 (1912); Simpson vs Mann, 48 L. R. A. N. S. 579.

"The written contract, not under seal, provided "that no alterations or additions shall be allowed or paid for unless the same and the cost be agreed to in writing in advance and no change or modification of this contract shall be recognized unless evidenced by an agreement in writing".

Oral evidence was given for the purpose of showing that change in the character of the work was ordered in behalf of Mann, and that he agreed to pay for it additional compensation. A brief in the case states that the clause just quoted from the contract constitutes the reason why the Court took the case from the jury. We do not think that the clause justifies that ruling. I quote from Page on Contracts s 1349:

"If the written contract contains an express provision that no change or modification thereof can be made except by writing to be signed by one or both parties, the parties to such contract may, nevertheless, modify or abrogate it by subsequent oral agreement, since the oral agreement will operate as a waiver of the terms of the contract inconsistent therewith, including that term which requires subsequent

modification to be in writing. Questions of this sort are often presented in building contracts, where it is provided that modifications of contracts for extra work must be in writing and subsequent oral agreements for extra work or modifications are held valid".

Bishops on Contracts : 7066 asserts this proposition broadly. "When he has agreed that he will only contract in writing in a certain way, he does not thereby preclude himself from making a parol contract to change it. There can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing, and every such agreement is ended by the new one which contradicts it". 69 Tex. 353; 6 S. W. 605; 5 Am. St. 63; 3 W. Va. 46. A written contract is of no higher dignity, except under the Statute of Frauds, than an oral contract and the party cannot tie his hands from its modification by prohibiting it unless in writing. Everywhere we find the law to be that a new or changed contract will take the place of, or modify, a former written contract not under seal. Clark on Contracts 610; 9 Cyc 597".

"But the parties to a written contract of the character of the one under review (providing that no change shall be made except upon a written order) are as free to alter it after it has been made as they were to make it, and all attempts on their part by its terms to tie up their freedom of dealing with each other will be futile. 58 Conn. 39; 148 Mass. 394. To this end parol agreements will be as effective as written ones". 74 Atl. 763 (765).

"It does not stand with reason that parties can by contract preclude themselves from contracting in any particular way; that such a contract, once entered into, becomes an iron bond, which the will of the parties is impotent to annul or modify". 53 Atl. 37.

"A contracting party cannot so tie his own hands, so

590

restrict his own legal capacity for future action, to bind or obligate himself by his further action or agreement contrary to the terms of the written contract (which required written consent to change it). 33 Mich. 143". 22 N. W. (Minn.).77.

"Attempts of parties to tie up by contract their freedom of dealing with each other are futile. The contract is a fact to be taken into account in interpreting the subsequent conduct of the plaintiff and defendant, no doubt. But it cannot be assumed, as a matter of law, that the contract governed all that was done until it was renounced in so many words, because the parties had a right to renounce it in any way, and by any mode of expression, they saw fit. They could substitute a new oral contract by conduct and intimation, as well as by express words". 2 L. R. A. 625.

"It has frequently been held in this State that restrictive clauses similar to, though not identical with, this one, (that contract will not be altered except by writing), can be waived expressly, or by the acts and conduct of the parties. The common provision in building contracts that no payments will be made without the usual architect's certificate is one; the very common provision in leases that the tenant shall not sublet without the written permission of the lessor is another. 73 N. Y. 567; 102 N. Y. 87; 5 N. E. 791". 17 N. Y. Supp. 351.

A written notice of 30 days provided in a lease is supplied by evidence by an oral consent showing a waiver of the written notice. 70 N. Y. Sup. 210.

The prohibition in a lease to sublet the premises for a different purpose without the written consent of the lessor may be shown to have been waived by parol consent of the lessor. 55 N. Y. Supp. 1; 4 Barb. 604; 7 Jones & S. 200; 102 N. Y. 92; 73 N. Y. 567; 67 S. W. (Mo.) 967.

"The consent (to sublease) is sometimes required by the terms of the lease to be expressed in writing".

591

"Written consent may be waived by parol". 24 Cyc 964 (e).

"An open policy of insurance may be modified by subsequent parol agreement although the policy provided that no condition should be waived except by specific indorsement on the policy". 88 Mo. 325 (57 Am. Rep. 416); 39 N. W. Minn. 76; 37 A. 254.

Where a building contract provides that

"no extra work is to be paid for except by contract in writing"

the parties may verbally, expressly or impliedly, or tacitly waive this provision and agree to alterations by parol. 1 Greal. (16 Ed) ⊗ 304; 18 Cal. 160 (165); 47 N. W. 473 (Neb.); 36 N. W. 510; 69 Pac. 784; 58 N. E. (ill.) 335; 76 S. E. 895 (W. Va.); 74 Atl.764; 36 Atl. 36; 166 Ills. App. Cy. 20 (23); 54 N. W. 937; 6 So. 834; 2 L. R. A. 625 (Mass.); 48 L. R. A. N. S. 564 (568) and authorities there quoted; 48 L. R. A. N. S. 579; 17 N. Y. Supp. 351; 9 N. Y. St. 570; 24 N. E. 1096; 19 N. E. (Mass.) 549; 141 N.Y.S. 222.

"The case seems to settle down to the simple question whether a person who has agreed that he will only contract by writing in a certain way, precludes himself from making a parol bargain to change it. The answer is manifest. A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it". 33 Michigan 143 (153); 53 Atl. 37.

"A written contract may be modified by a verbal agreement, though the contract recites that no modification shall be made except in writing". 27 S. W. 504 (Texas); 11 Century Digest Vo. Contracts p 1242 § 1123.

"A written contract may be modified by the parties thereto in any manner they choose, notwithstanding agreements prohibiting its alteration except in a particular

manner. So it is generally held that a contract stipulating that any modification must be in writing may nevertheless be modified verbally". 13 C. J. 594 s 611.

9 Cyc p 597 (11)

"A simple contract, whether written or oral, may be discharged, according to the weight of authority, by a subsequent written or oral contract, unless there is a statutory provision to the contrary. Nor is it material that the written contract provides that no modification shall be made except in writing, for this provision itself may be changed by word of mouth".

These authorities are in accord with commentators of the Code Napoleon, and with the decisions of the Court of Cassation and Courts of Appeal of France in the interpretation of the right of the lessee to sublease, and for the same reason. 18 Baudry-Lacantinerie says: s 1107 p 584:

"As we shall say further the verbal or tacit consent of the lessor suffices, even when the contract of lease requires his consent in writing".

§ 1117 p 588:

"The tacit consent suffices, even when it has been said that the consent in writing of the lessor shall be necessary. The necessity of a writing has been stipulated only to facilitate the proof: the parties did not intend to subordinate the validity of the sub-lease to a writing. Even had they so intended, the verbal or tacit consent would still be sufficient, because the lessor could not bind his hands and condemn himself not to be able to consent without a writing; therefore if he gives his consent without writing, a new agreement is formed by virtue of which the sub-lease is admitted by the lessor. Hence, the Court of Cassation does not go far enough, according to us in deciding that it belongs to the judges to decide finally if the writing has been or not, according to the wishes of the parties, a substantial element of the consent". C. N. 1341, 1717; 30 Dalloz Rep. p 406 S 475; 4 Dalloz Codes Ann.

p 325 No. 189 et seq; 1 Trolong Louage No. 141; 25 Laurent
§ 232.; 1 Guillouard Louage § 327; 4 Fuzier-Herman on
Art 1717 p 254 § 48, 49, 50.

Assuming therefore that the verbal notice was given,
assuming that it reached plaintiff or his agent, which is equally
binding, assuming that the plaintiff made no objection to the
parol notice, I have come to the conclusion that the parol no-
tice given in this case was sufficient, and that defendant had
legally revoked her procuration to the plaintiff in July or
August 1918, and that plaintiff's claim is therefore not founded,
and that there ought to be judgment in favor of defendant reject-
ing his demand.