## No. 10,207.

JACOB WEINBERGER ET AL. VS. THE MERCHANTS' INSURANCE COMPANY.

Neither a judgment of non-suit, nor one dismissing a suit for want of proper parties, will sustain the plea of *res adjudicata*.

The courts of this State administer both legal and equitable relief.

Prayers in the alternative asking for either are not inconsistent.

A person doing business with an insurance company ought to inform himself of its general course of business and as to the terms and conditions of the policy issued on his application.

Ignorance of the conditions and exceptions in the policy will not, on that account, avail as an excuse for violating the terms and conditions of the policy.

It is a maxim of the law that "words referred to are considered as incorporated," and the same rule applies where a particular clause refers to another clause in the same instrument, or to one disconnected with the instrument to which reference is made. An application for an insurance policy containing a reference to a clause making exceptions, the latter clause forms a part of the application. The application and the policy must be construed as one instrument.

Where there is no ambiguity requiring explanation in the language of a written contract, and the intent is plain and complete, no evidence will be admitted to give another construction to it than that which is so plainly expressed.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe*, J.

*Leovy & Blair* and *R. DeGray* for Plaintiffs and Appellees:

First. The defendant acknowledged the vessel was covered by the policy insured on, at the time she was damaged, on the voyage from Galveston to Vera Cruz:

Weinberger et al. vs. Merchants' Insurance Co.

1. By notifying the assured after the condemnation of the vessel at Vera Cruz, that the company would hold the assured to all the obligations imposed on them by said policy.

2. By sending its inspector, Captain Baker, to Vera Cruz, Mexico, to look after said vessel after said company was informed of the vessel's damage and condemnation.

Second. The evidence shows that the president and the general agent of the defendant company knew that the vessel was intended to be used in Texas and Mexican ports. To issue a policy, under the circumstances disclosed in the record, containing a printed warranty against the use of such ports, was an act of bad faith. Defendant is, therefore, estopped from availing itself of this warranty even if it intended it to be an operative part of the contract of insurance. Wheeler vs. Traders' Insurance. 2 East. Rep. 136; Kruger et al. vs. Insurance Company, 13 Pacific Reporter, 156; Wood on Insurance, p. 149, note.

Third. The policy is to be liberally construed in favor of the insured. Exceptions to the risk and forfeitures are to be taken most strongly against the insurer. 1 Arnould on Marine Insurance (ed. 1850). p. 65, note; May on Insurance, § 175, pp. 205, 206; Wood on Insurance, § 59, pp. 140, 141; Id., § 67, pp. 157, 158; 1 Phillips on Insurance (ed. 1853), p. 85, § 131.
  The written portion of the policy prevails over the printed part. 1 Arnould on Marine Insurance, § 46, Rule v; May on Insurance, § 176, p, 184.

Fourth. Full and complete effect must always be given to the written description of the risk. It must not be destroyed even in part, in order to give effect to a conflicting printed clause. To do so would make the printed override the written. Wood on Insurance, p. 129; Id. § 63. p. 149; Id., p. 150; Plinsky vs. Insurance Company, 32 Fed. Rep. 47.

Fifth. As the printed words are general, intended for any like occasion, and the written were specially selected for the particular instance, the latter, in a case of conflict, will prevail. Still, interpretation will reconcile all where it reasonably can; and, as a means to this end, will give greater weight to the written parts than to the printed. Robertson vs' French. 4th East. 130, 136; Bishop on Contracts, 415; Hernandez vs. Sun Mutual, 6th Blatch. 317; American Express Company vs. Pruckney, 29th Ill. 392; Howard Fire Ins. Co. vs. Brunner, 11th Harris Pa., 50; Chadsky vs. Guinn, 97 N. Y. 333. See also Clark vs. Woodruff, 83 N. Y. 518.

### *Thomas J. Semmes* for Defendant and Appellant:

1. The bringing of an action at law on a policy of insurance and prosecuting it to judgment. is a conclusive election to consider it as expressing the true contract between the parties, and an abandonment of any attempt to have it reformed in equity. Washburn vs. Insurance Company, 114 Mass. 175; May, Insurance, section 566; Wood, Insurance, section 808; 1 Duer, Insurance, p. 74; 90 New York. 428; Taney's Rep. 277.

2. Neither a policy of insurance or other written agreement can be reformed unless a mistake be made by both parties, so that the intention of neither is expressed; or, if the mistake be on one side, there must be fraud on the other in taking advantage of the mistake and obtaining a contract with the knowledge that the one is dealing with him in error. Bryce vs. Lorillard & Co., 55 N. Y. 243: Insurance Company vs. Davis, 131 Mass. 318; 78 N. Y. 618  64 N. Y. 456; 59 N. Y. 244; 2 Cranch, 441: 7 Ann. 228; 50 Md. 524.

3. A mistake as to the legal effect of the instrument is no ground for its reformation. 46 Ark. 167 (55 Am. R. 571); Prescott vs. Cooper, 37 Ann. 553.

4. The mistake must be proved beyond a reasonable doubt. 64 N. Y. 456; 63 Ala. 488; 67 Cal. 317; 30 Fed. R. 862.

5. The mistake must arise from ignorance, surprise, or misplaced confidence. 65 Ga. 103; 90 Pa. 228.

6. And no evidence is allowed to prove the mistake unless the policy was written differently from what was agreed on. Insurance Company vs. Huntzinger. 98 Pa. 47.

7. Ordinary diligence must be used to discover the mistake. 70 Ga. 794.

8. It is no excuse that plaintiff did not read the policy till after the loss. 21 S. C. 24 (57 Am. R. 669); 114 Pa. 398.

9. Failure to bring suit for reformation until the loss has occurred is an unfavorable circumstance. Steinback vs. Insurance Company, 77 N. Y. 498.

10. Unless there be a contradiction between the written and printed clauses of a contract, both must be enforced, because, in such case, the written do not control the printed words. Grierson vs. Insurance Company, 6 N. S. 55; Hunter vs. Insurance Company, 11 Ann. 139; Joyce vs. Insurance Company, L. R. 7, Q. B. 583.

The opinion of the Court was delivered by

McENERY, J.   Jacob Weinberger and John Julia, commercial partners, engaged in the fruit trade in the city of Galveston, bought the steamer James H. Geary, of Woodward & Wight, of the city of New Orleans, and had her repaired in said city, and insured in the Merchants' Mutual Insurance Company.   The repairs were made under the supervision of W. M. Baker, marine inspector for the company.

In November, 1882, on a voyage from Galveston to Vera Cruz, the Geary encountered severe gales and was so damaged that she was condemned and sold,

Plaintiff bring this suit to recover on said insurance policy of the defendant company the sum of five thousand four hundred dollars and eighty-seven cents, with five per cent interest from March 1, 1883.

In the United States Circuit Court, suit No. 10,308, plaintiff sued the defendant company in a suit at law to recover on said policy, and afterwards in suit No. 10,957 in equity in the same court for the same purpose, praying that the policy be reformed by striking out the printed clause prohibiting the use of Texas and Mexican ports, and that on the policy as amended judgment be rendered against the company.

Defendant excepts peremptorily to the petition in this suit, alleging as a reason therefor the proceedings in the above suits in the U. S. Circuit Court.   In suit No. 10,308 plaintiffs declared on the policy in a suit at law, and are estopped from suing to reform the policy; and in the equity suit 10,957, the matters in dispute were finally determined and are *res adjudicata*.

In the first suit, No. 10,308, there was a judgment of *non-suit* only. After the dismissal of the suit plaintiffs were at liberty to bring another suit.   The judgment decided nothing.

In suit No. 10,957 in equity, after several pleas, amended bills, etc., there was on a demurrer of defendant, a dismissal of the suit for want of proper parties.   In neither suit was there a final judgment and in neither case a plea of *res adjudicata* or estoppel is sustained.   There is no inconsistency in the demands made in said suits and the pending suit. The judgment of the lower court overruling the exception was correct.

Defendant moved to compel plaintiffs to elect whether they would

proceed on the demand to reform the policy, or on the policy itself. The evidence was correctly overruled. There is no inconsistency in the alternative prayers of plaintiffs, and if the allegations in a petition will warrant equitable relief, this court, under the well-recognized jurisprudence of the State will grant it. Such is the prayer of plaintiffs in their petition. Art. 21 ; 1964 *et seq.*

Defendant answered, denying any liability on the part of the company, that the vessel was damaged and the loss occasioned by a violation of a prohibitory clause in the contract of insurance made between plaintiffs and defendant.

The application for the policy of insurance was made on the 2d day of May, 1882, on the blank form furnished by the company as follows : "To navigate the Gulf of Mexico, the Carribean Sea and the Antlantic Coast as far up as Boston."

In the body of the application preceding the signature, in plain type, the following forms a part of the application : " This application is made and accepted, subject to all other clauses and conditions in the policies of the company."

The clause and condition in the policy referred to, and which is the matter of contention in this case, is as follows : " Warranted by the assured not to use port or ports in Eastern Mexico, Texas nor Yucatan, nor anchorage thereof during the continuance of this insurance." Plaintiffs' right to recover depend upon a construction of the last clause, whether or not it forms a part of the contract. They contend that it was well understood that the intent was for plaintiffs to navigate the Gulf of Mexico and Carribbean Sea, to use the ports of Mexico and Texas, without exception, and that said clause of warranty prohibiting the use of said ports should be stricken out. In order to obtain relief it is incumbent upon plaintiffs to show that there is some conflict or inconsistency between the written and printed parts of the contract, and that the latter controls and conveys the *intent* of the parties to the contract, or that there was an error made by both in the contract, so that the intention of neither is expressed, or if there was error on one side it was the result of some artifice or fraud on the part of the other, or that the contract was executed on the part of plaintiffs on his construction of the intent and meaning with the express or implied consent of defendant.

The written part of the application forms a part of the policy, and is copied and incorporated in the policy, and thus the application and the policy form but one contract.

The policy was delivered some fifteen days after the application was made. The assured cannot plead ignorance of the clauses in the policy.

It was their duty to read the policy, so as to determine whether or not it was made in accordance with. the application.  The defendant company insures vessels navigating the seas, but has clauses in its policies excepting certain ports and localities from its risks.  A person dealing with an insurance company ought at least to know the general course of its business, and in the application, if he desires exceptions in policies to be avoided, he ought to state the fact in his application and be willing to pay the additional premiums for the risk.

It is a maxim of the law that words referred to are considered as incorporated.

*Verba illata in esse videntur.*

And the same rule applies where a particular clause refers to another clause in the same instrument, or to one disconnected from the instrument to which reference is made.  The clause in the application for a policy of insurance on the Geary referred to a clause containing exceptions in the policy with reference to certain ports.  This clause formed a part of the application though it had been written or printed in it :
" To cover hull, apparel, etc., of steamer James A. Geary to navigate the Gulf of Mexico, Carribbean Sea and along the Atlantic Coast, as high up as Boston, the assured not to use port or ports in Eastern Mexico, Texas or Yutatan, nor anchorage thereof during the continuance of this insurance."

When there is no ambiguity requiring explanation in the language of a written contract, and the intent is plain and complete, no evidence will be admitted to give any other construction to it than that which is so plainly expressed.  C. C. 1945–1956.

Neither equity nor usage can be resorted to in order to enlarge or restrict that intent.  C. C. 1963.

Authorities are cited by plaintiff to show that the contract of insurance should be construed in the manner in which the assured understood.  This is undoubtedly true when the intent is doubtful, and is so expressed in Articles 1956 and 1957 C. C.

The evidence in the record does not convince us that the insurance company had any knowledge of the intention of the owner of the Geary to put her in the trade between Galveston and Vera Cruz.

There is some conflict in the the testimony of Fourchy, the President of the Company, and W. M. Baker, the inspector, on the one side, and Wight, for plaintiffs, on the other.

Fourchy and Baker deny all knowledge of any intent on part of plaintiffs to employ said vessel in commerce with any of the prohibited ports.

They say, on the contrary, after her employment between Mobile and

Havana, she was to be used in the fruit trade with the Bahama Islands. Pearl Wight says his firm was negotiating with the owners of the vessel to take a cargo of lumber for the M. C. R. R. to Tampico, and that he told Mr. Fourchy, when negotiating for the policy, that she might want to go to Tampico. There was no agreement and no contract for this proposed voyage.

That nothing was said to Fourchy, the president of the company, about excepting Texas or Mexican ports from the prohibitions in the policy, is evident from Mr. Wight's answer to an interrogatory : " I think that the only thing that was talked about that I have any recollection of was about allowing her to run North, and this man stated that he might want to send her East for repairs, and that's why the Boston clause was put in there." The fact that Galveston was the hailing port of the vessel is of very little consequence. A vessel may hail from a port and be employed during her life in distant seas, and never again visit her home port.

. Plaintiffs contend that the defendant company issued policies and paid losses on the Silver Wing and Daybreak in each of which may be found printed clauses warning against the use of Mexican and Texas ports, similar to the clause in the policy sued on. But the written applications and the written parts of the policy allowed the use of these ports. In the instant case there is no such permission asked in the application or granted in the policy. Evidence showing that the insurer and insured meant to make a certain contract, but that misconception of the effect of the language and terms in the policy defeated their intention, makes a proper case for its reformation.

The evidence in such case, however, must be clear. If there be a substantial doubt as to what was the statement of the applicant, or as to the fairness of his claim to have been mistaken, or the agreement of the parties, or a material conflict of testimony, the court will not aid the plaintiff. The affirmation is upon the plaintiff, and he must show what statement he made and what the agreement was. May on Ins. § 566, p. 871.

The plaintiffs have failed to show that there is any ambiguity or doubt in the policy widening the contract, or that the intention of the parties was other than that expressed in the insurance contract, or that there is any contradiction between the printed and written clauses of the contract.

The judgment appealed from is therefore avoided, reversed and annulled, and it is now ordered that the demand of plaintiff be rejected with costs.