## TUCKER v. NATIONAL LINEN SERVICE CORP. et al.
### No. 14080.

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1953.

Rehearing Denied March 3, 1953.

William G. McRae, Atlanta, Ga., Richard A. Dowling, New Orleans, La., for appellant.

James A. Branch, Max F. Goldstein, B. D. Murphy, Elliott Goldstein, Wm. G. Grant, Herbert J. Haas, Joseph F. Haas, Atlanta, Ga., John Wesley Weekes, Decatur, Ga., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES, and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal from a judgment dismissing a stockholders' derivative action, brought on behalf of Crescent City Laundries, Inc., formerly Laundry & Dry Cleaning Service, Inc., arises out of and is based on the organization in 1928 of National Linen Service Corporation by Southern Linen Supply Corporation, Atlanta Laundries, Inc., Laundry & Dry Cleaning Service, and Sidney W. Souers, and the distribution of its common stock to the organizers. It is the latest in a series of five such dismissals and appeals.[1]

Because each of the actions from which these appeals have come, though not always brought by the same stockholders or against the same defendants, was brought on behalf of Crescent and was in part based on, and sought relief from, claimed diversion and conversion of stock in the National Linen Service Corporation, a preliminary statement as to the pleadings and claims in, and the results of, those suits is necessary.

In the first of the actions, the claim was in general that, by acts of malfeasance, misfeasance, and nonfeasance on the part of Crescent's officers, directors, and others, fraudulently conceived and as fraudulently carried out, Crescent had suffered great losses and deprivations, giving rise to many causes of action.

Among the thirteen causes of action, as summarized and listed in our opinion in

1. The opinions in the others in order of sequence are reported as follows: Kohler v. McClellan, 5 Cir., 156 F.2d 908; Kohler v. Humphrey, 5 Cir., 174 F.2d 946; Tucker v. New Orleans Laundries, Inc., 5 Cir., 188 F.2d 263; Tucker v. National Linen Service Corp., 5 Cir., 188 F.2d 265.

Kohler v. McClellan, 5 Cir., 156 F.2d at page 909, were: "8. The transfer of stock in National Linen Supply Company to certain of the defendants without consideration"; and "13. The execution of a plan by B. C. McClellan and associates to default Crescent's bonds and to purchase, at great loss to Crescent and profit to themselves, the assets of Crescent at the consequential sheriff's sale."

Motions to dismiss were filed on various grounds, including among them, (1) the failure of the complaint to state a cause of action; (2) the prescription of one, five, and ten years under the laws of Louisiana; (3) the claim or claims asserted by petitioner in behalf of Crescent belong to and are the property of the New Orleans Laundries, Inc.

The district judge sustained the motions and entered a judgment dismissing the complaint on the merits.

On appeal to this court, upon full consideration we affirmed the judgment as to all the claims and causes of action asserted, except number thirteen, for the reasons set out in the carefully worded opinion, from which we quote:

"The correctness of the ruling below is the question presented here.

"*The original and supplemental petitions make it plain that on July 9, 1942,* 'all the debtor(')s choses in action and claims of any and every character against any and all persons whomsoever, whether or not shown upon the books of the debtors, and all of the debtor(')s cash, assets and effects of every name, character and description' were sold at public outcry by the civil sheriff of Orleans Parish, Louisiana, under a writ of fieri facias issued upon a money judgment against Crescent; that an attorney at law in New Orleans bought in the properties at the auction sale and transferred them to N. O. Laundries, Inc., a Louisiana corporation; and that title to all the claims against the defendants except those against B. C. McClellan and associates for their alleged fraudulent and illegal

acts in connection with the sale passed to N. O. Laundries, Inc.

"Appellant, however, argues that the seizure and sale of all of Crescent's choses in action and claims under the general description quoted above were made under too vague and indefinite a description to give notice of specific rights and credits seized or specific rights and credits sold; hence, that all choses in action and claims remained, following the seizure and sale, the property of Crescent, and are still its property, including the claims asserted against defendants in this suit. The descriptive words of the property seized and sold clearly show an intent to seize and sell all of the assets of Crescent of every kind and character. As between the parties to the sale, Crescent and purchaser, where it was purposed to seize and sell all assets, a general description broad enough to cover all assets was sufficient. Only upon the seizure and sale of specific property must the description positively identify the property. In the absence of one party to the sale the description will not become any less inclusive. Therefore, in the absence of the owner of all claims of Crescent sold at the sheriff's sale, the court below could only adjudicate upon the claims connected with and arising out of the sale itself." 156 F.2d at page 910. (Emphasis supplied.)

Reversing only as to claim number thirteen and as to the defendant McClellan, and sending the cause back for a trial on this claim, we said:

"The allegations dealing with the formation of a plan by McClellan and associates to wreck the corporation and force a public sale of all of its assets so that they could buy the assets at great profit to themselves, and the execution of the plan—the consequential sale of Crescent's assets to their alleged agent and the transfer thereafter, at a large profit, of such assets to a corporation organized by them—set forth a cause of action (claim) which was not sold in the sale of Crescent's assets on

July 9, 1942, and with respect to which the prescriptions pleaded are either not applicable or have not run. Who McClellan's associates were in the plan to wreck the corporation and effect a sale of Crescent's assets is not shown, and there is nothing in the complaints to connect the other defendants with the plan or with the execution of the plan. In dismissing the suit the court below acted properly as to all claims and all defendants except as to claims against the defendant McClellan arising out of the sale."

The district judge ordering a repleader, Kohler named as defendants only the personal representatives of McClellan and, re-alleging against them the substance of claim thirteen, prayed for judgment thereon.

After a full trial in which the greatest latitude of proof was allowed, the district judge held: that the suit as repleaded had been converted from a stockholders' derivative action on behalf of Crescent into a suit for a direct personal tort upon plaintiff and other minority stockholders. In the alternative, the plaintiff insisting that the action was still a derivative one on behalf of Crescent, he held that if it was such action, the evidence did not sustain the recovery. So holding, he dismissed the suit on both grounds, and, on appeal to this court, the judgment was, in Kohler v. Humphrey, 5 Cir., 174 F.2d 946, affirmed on the first ground.

Thereafter, the plaintiff in this suit, Mrs. Tucker, taking over the laboring oar, filed on behalf of Crescent, two suits, one in the Northern District of Georgia, one in the Eastern District of Louisiana, against a great many defendants, some eighty in all. These included the ten defendants named in the present suit from which this appeal comes, Crescent City Laundries, Inc., National Linen Service Corporation, Atlanta Laundries, Inc., I. M. Weinstein, J. B. Jacobs, A. J. Weinberg, Sidney W. Souers, and the Trust Company of Georgia, Executor of the Estate of George H. Fauss, T. A. Martin, and Herbert J. Haas.

The complaints, in one case in 412 and in the other in 413 numbered paragraphs, comprised, with their many exhibits, 302 printed pages in one case and 292 in the other. They alleged in detail the facts and circumstances attending the formation in 1928 of the National Linen Service Corporation and the then distribution of the 150,-000 shares of its common stock, and set out as exhibits the agreements executed and the resolutions adopted.

Alleging by way of a conclusion that there was a fraudulent diversion of a large number, some 54,000, of the common shares of National belonging to Crescent, and their conversion by the defendants named, it prayed: that the court construe the agreements and the stockholders' resolutions, in the light of all the facts, and determine and declare the equitable interest of Crescent in and to the 150,000 shares of common stock which were, pursuant to the agreements, delivered to the voting trustees; that judgment be rendered in favor of Crescent against the defendants named as for conversion; and that an accounting be had for income and dividends accrued thereon.

The defendants in each of the cases filed motions to dismiss for want of the requisite diversity, and, subject thereto, they filed motions to dismiss on the merits. These motions set up, among other grounds: that the causes of action sought to be asserted had been adjudicated against the corporation in the case of Kohler v. McClellan; that the suit of plaintiff was a suit to attack collaterally the validity of a judgment and sheriff's sale thereunder; and that the complaint showed on its face that Cresent was not the owner of the claims or causes of action sued on but that same had passed by the sheriff's sale to New Orleans Laundries, Inc.

The motion to dismiss for want of jurisdiction was sustained, and the judgments of dismissal entered in both causes were, on appeal to this court, affirmed.

Thereafter, on November 23, 1951, twenty-three years after the claimed frauds had been conceived and perpetrated upon it, Mrs. Tucker, on behalf of Crescent, brought the present derivative action. The complaint in this suit, while still lengthy, consisting of 178 numbered paragraphs and

having attached to it several of the exhibits attached to the petitions in her former suits including the voting trust agreement, did not allege the facts as fully, or as fully set out the exhibits, as the former petition had done. Particularly it did not set out as

2. In 1924, in the City of New Orleans, B. C. McClellan and others organized Crescent City Laundries, Inc., under its former corporate name of Laundry and Dry Cleaning Service, Inc. In addition to acquiring a number of laundries already in existence, Crescent owned a linen supply business.

At the time of its organization the corporation issued bonds in the principal sum of $1,700,000.00, certain preferred stock and common stock. Max N. Kohler received common and preferred stock, and the present plaintiff, Mrs. Odile V. Hubert Tucker, received certain preferred stock. Dividends on the preferred stock were defaulted in 1930 and continued in default thereafter, while interest on its bonds were in default from and after October, 1932.

National Linen Service Corp. was organized in 1928. It took over the linen supply business formerly operated by Southern Linen Supply Corp., hereafter called Southern, of which defendants Weinstein, Weinberg, and Jacobs were controlling stockholders, and Crescent and Atlanta Laundries, Inc., of which McClellan and his associates were apparently the dominating figures.

Defendant Sidney W. Souers, then Vice-President of the Canal Bank & Trust Co. of New Orleans, entered into an agreement with defendants Weinberg, representing the Southern Linen group, which furnished four-fifths of the value of the properties conveyed, and B. C. McClellan, now deceased, representing the Laundries which furnished one-fifth thereof, for the transfer of their linen supply assets to the new corporation, which was to issue stock as follows: 20,-629 preferred shares, 150,000 common shares.

Of the preferred shares which, as shown by the distribution, alone had any substantial value, 16,037, or four-fifths thereof, were issued to Southern, and the balance were issued, to Atlanta Laundries 1691 shares, to Laundry & Dry Cleaning Service, to Crescent, 2901 shares.

$500,000.00 in bonds was to be issued by the new corporation. Souers agreed to underwrite the bond issue, and to purchase the same at ninety-percent of its face value.

exhibits the three party contract for the formation of National Linen Service and the resolution providing for the distribution of common and preferred shares which had been set out in full in the first case. For a statement of the facts [2] deemed requisite

Of the 150,000 shares of no par common stock to be issued, Souers, the underwriter, was to, and did, receive 50,-000 shares for his services as the third party in organizing the corporation and underwriting its bond issue; 50,000 shares were to be issued to the Southern Linen group; and 50,000 shares to Atlanta Laundries, Inc. and Crescent City Laundries, Inc., on the basis of the preferred holdings of each. There were first issued to Crescent 27,735 shares and to Atlanta 16,165, while to McClellan and others, none of them parties to this suit, there were issued the balance of 6100 shares. Later Crescent by resolution spread on its minutes surrendered the certificate for 27,735 shares and accepted a new certificate for 23,518 shares, while the 4187 shares surrendered were issued to McClellan in two certificates, one for 2200 and one for 1987 shares.

Pursuant to the agreement, National Linen Service Corporation was organized and the securities issued, the common stock being placed in a voting trust. The voting trust, which is an exhibit to the first Tucker case and this case, and was referred to in the Kohler case, provided for seven voting trustees, three named by the Southern Linen group, three named by McClellan and associates. Mr. Sidney Souers, being the seventh trustee. The voting trust contract specifically relieves the voting trustees "of any responsibility by reason of any error of judgment or of law or fact, or of any matter or thing done or omitted under or in connection with the performance of this agreement, except for his own individual wilful malfeasance", and a further provision specifically relieves them from the liability for any mistake made by the registrar in the disposition of the National Linen stock.

Crescent defaulted on its bond interest April 1, 1933. The original trustee resigned, and John F. Finke was appointed successor trustee. In 1942, he filed suit in the Civil District Court of the Parish of Orleans, Louisiana, seeking recovery of a personal judgment for the amount due on the Crescent bonds and a special lien provided for by the mortgage given to secure them. On April 28, 1942, a judgment was entered in his favor against

for a proper understanding of this protracted litigation, we will therefore draw upon the records in all of the preceding cases. Ellis v. Cates, 4 Cir., 178 F.2d 791; Bienville v. City of Mobile, 186 U.S. 212, 22 S.Ct. 820, 46 L.Ed. 1132. .

As had been done in all the other suits, particularly the two earlier ones brought by Mrs. Tucker, the complaints, by way of conclusions as distinguished from facts, alleged that there had been fraud in the distribution of the common - stock which, also by way of conclusion, the complaint alleged was the property of Crescent but had been fraudulently diverted by the defendants.

The relief sought was: (1) an accounting for all dividends and receipts upon 54,000 shares of stock claimed; (2) an order requiring National Linen to cancel the certificates of stock now standing in the names of Souers, George H. Fauss, T. A. Martin, and Herbert J. Haas, and the issuance of new certificates to Crescent therefor; and (3) an order requiring these persons to surrender their certificates for cancellation with an accounting as to the dividends received thereupon.

By amendment of its petition, plaintiff further alleged that the sale by the sheriff of the voting trust certificates for the 23,000 shares in Crescent's name did not constitute a seizure of the common stock of

National Linen Service Corp. and that the sale was not effective to convey them. ·

As alternative prayers for relief, plaintiff sought a judgment on count one of the complaint against all of the defendants named except Souers, as for conversion, and under the second count that National be compelled to issue a certificate of common stock to Crescent for 210,132 shares, and a judgment for all dividends which were declared on the stock, from July 9, 1942, until the date of judgment, be entered against it.

In further alternative, plaintiff sought a judgment in favor of Crescent for the market value of 23,000 shares of stock and their increase.

The defendant Sidney Souers, who had been served by substituted process, appearing specially, filed a motion to dismiss as to him for improper venue, and also a motion to dismiss for want of diversity and of indispensable parties. Subject to these motions, he moved to dismiss on the merits on the grounds: (1) that no cause of action was stated; (2) that it appears from the face of the complaint that the claims asserted are not the property of Crescent City Laundries but, if existent, are the property of N. O. Laundries as a result of the sheriff's sale; (3) that the suit is barred by the statutes of limitations of Louisiana and Georgia; (4) that it is barred by laches, the matters complained of occurring in

---

Crescent City Laundries, Inc. for $1,700,-000.00 plus interest for nine years, approximately $900,000.00 additional. Fieri Facias issued on the judgment June 2, 1942, under which Louis Knop, Jr., the Civil Sheriff, made a seizure of the assets, which are described in the present record, Exhibit B. They include the 23,-548 shares of common stock of National Linen represented by voting trust certificates, and all the debtor's other choses in action and claims of any and every character against any and all persons whomsoever.

The sheriff exposed this property to public sale on July 9, 1942, and they were purchased by the Bondholders Protective Committee, for $1,600,000.00 of principal and interest. The sheriff executed a deed to the Bondholders Protective Committee to all the assets described in the levy, and the Bondholders Protective Commit-

tee sold all the assets acquired by them to New Orleans Laundries, Inc., July 10, 1942.

Subsequently, New Orleans Laundries, Inc., distributed to its shareholders the voting trust certificates of 23,548 shares of National Linen stock which it had acquired through the sheriff's sale, and, upon presentation of the old certificates, new voting trust certificates were issued to the stockholders of New Orleans Laundries or their transferees.

The voting trust extended in 1938 for ten years was terminated in 1944 on an agreement between the certificate holders and the voting trustees, the instrument containing provisions for such termination. Upon this termination, the registrars delivered the shares of common stock to the persons then owning voting trust certificates.

1928, and plaintiff alleging no fact which prevented an earlier discovery of the alleged wrong.

National Linen Service Corporation and the other defendants alleging the absence of indispensable parties who are residents of the state of Louisiana, moved to dismiss therefor, and otherwise pleaded: failure of the complaint to state a right to recover; the statutes of limitation of Louisiana and Georgia; laches; *res judicata;* and that the causes of action sued on have passed by the sheriff's sale.

The district judge, without stating his reasons, sustained the motions to dismiss, and the case is here on appellant's insistence: that the court had jurisdiction to proceed against all of the defendants, including Souers; that the complaint stated a cause of action which was barred neither by limitations nor by laches; that the sheriff's sale in Louisiana was ineffective to pass Crescent's title to the causes of action sued on; and that it was error to dismiss appellant's suit.

For the reasons hereinafter briefly stated, we do not think so. The suit was *in personam.* It was not in any sense a suit *in rem,* which would sustain an action on substituted service. Souers, who was alleged to be, and was, a citizen not of Georgia but of Missouri, and was not suable in Georgia, was not, therefore, before the court.

In so far as the complaint seeks equitable relief by way of cancellation of certificates standing in the names of persons not parties to the suit, and their reissue to Crescent, we think it plain that the suit fails for want of indispensable parties, the persons in whose names the certificates of stock now stand, not Souers only but the many others not sued or suable here.

■ Whatever of uncertainty, of confusion, or of difficulty, may at any time have attended the statement of the principle of indispensability or its application to particular facts, one thing is clearly settled with respect thereto. This is that, where cancellation, reformation, or other equitable relief in respect of a contract or other instrument evidencing a right or claim is sought, all of those having or asserting an interest in the contract or instrument, or who will be affected by the decree, are indispensable parties and must be before the court.[3] This is so because, while the absence of indispensable parties as such does not go to the jurisdiction of the court as a federal court but to its jurisdiction as a court of equity, if federal jurisdiction depends wholly upon diversity of citizenship, such jurisdiction may be maintained or defeated by the presence or absence of indispensable parties, as the case may be. In so far, therefore, as the suit sought equitable relief of cancellation and its incident an accounting, as to certificates of stock now standing in the names of persons who are not, and cannot be made, parties to the suit without destroying diversity jurisdiction, the district judge was clearly right in dismissing the action for want of these indispensable parties.

■ He was right, too, in dismissing on the merits, the claims for such relief sought as to stock standing in the names of persons made parties to the suit by pleadings and process, and the alternative claims for damages. This is so for many reasons, the first of which is that the facts alleged, as distinguished from the conclusions of the pleader, do not state a cause of action for such relief against any of these defendants.

Plaintiff did, indeed, throughout her complaint speak of conspiracy, fraud, and collusion but the facts which she alleged did not support, they rebutted, these conclusions. As pleaded in the present suit, without the evidentiary details in which the pleadings in the former suit abounded, the bald conclusions might have had some sup-

---

3. Shields v. Barrow, 17 How. 129, 58 U.S. 129, 15 L.Ed. 158; Nat. Licorice Co. v. NLRB, 309 U.S. 350, 60 S.Ct. 569, 84 L. Ed. 799; Wilhelm v. Consolidated, 10 Cir., 84 F.2d 739; Calcote v. Tex. Pac. Coal & Oil Co., 5 Cir., 157 F.2d 216, 167 A.L.R. 413; Hudson v. Newell, 5 Cir., 172 F.2d 848; Young v. Powell, 5 Cir., 179 F.2d 147. Cf. what is said in Pusey & Jones v. Hanssen, 261 U.S. 491, at page 500, 43 S.Ct. 454, 67 L.Ed. 763, and the authorities there cited.

port in a negative way from the failure of the pleadings to explain actions and conduct as alleged which, without explanation, might have seemed to support the charges made.

When, however, the pleading in appellant's former case is turned to, what, and all that, was agreed to and done and said in connection with the formation of National Linen and the distribution of its stock is set out, it is at once seen that as to the defendants named in this suit, the conclusions are not correctly drawn from the facts but are indeed in contradiction of them.

What we said in Simmons v. Peavy-Welsh, 5 Cir., 113 F.2d 812, 813, where the plaintiff, as here, pleaded the facts fully, applies with equal force here:

"This is not a case where the plaintiff has pleaded too little, but where he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them. The appellant was not content to make a short and plain statement of the facts, but undertook to plead evidentiary facts in detail. The motion to dismiss admits these facts to be true, but denies their legal effect. The court below held that the written correspondence, submitted by appellant, made it clear that there was no liability under either count. Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."

The principle invoked there and here is not one new and strange but of long standing. This is not to say that the plaintiff should not have pleaded her facts fully. Indeed, the Federal Rules of Civil Procedure, 28 U.S.C., providing in Rule 9(b): "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity", required her to do so. It is to say, though:

"* * * that, as other courts have done, we disregard, as mere conclusions, the loose and general, the factually unsupported, characterizations of the complained of acts of the defendants, as malicious, conspiratorial, and done for the purpose of depriving plaintiffs of their constitutional rights; that the things defendants are alleged to have done, as distinguished from the conclusions of the pleaders with respect to them, do not constitute a deprivation of the civil rights of plaintiffs, do not give rise to the cause of action claimed; * * *." McGuire v. Todd, 5 Cir., 198 F.2d 60, 63.[4]

When the pleadings are searched with this distinction between legal conclusions and statements of fact in mind, no basis will be found for the claim that any of these defendants were guilty of defrauding Crescent.

The second of these reasons is that, as determined by us in the Kohler case, supra, the first of the suits brought on Crescent's behalf, the claims or causes of action of Crescent in respect of the distribution of the common stock of National passed to the purchaser at the sheriff's sale and have not since been the property of Crescent.

The third reason is that, if the two reasons first given are incorrect, it is still true that, because of the great lapse of time and great changes in circumstances, since the claimed causes of action arose, including therein the great depression in the thirties, the great changes in value, the deaths of many of the witnesses, and because what was done was spread upon the records at the time, and there was no concealment, the claims have long been barred by laches and by limitation.[5] The pleadings will be searched in vain to find any basis for the claim that the number of shares distributed to and accepted by Crescent was secret and kept so. Its minutes showed: that 27,735 shares were first issued to it; that it sur-

---

4. Cf. United Protective Workers of America v. Ford Motor Co., 7 Cir., 194 F.2d 997 at page 1001.

5. Redman v. United Fruit Co., 2 Cir., 185 F.2d 553; Code of Georgia, 1933, Sec. 37–119; Citizens & Southern Nat. Bank v. Ellis, 171 Ga. 717, 156 S.E. 603; Anderson v. Gailey, D.C., 33 F.2d 589–592; Code of Georgia, Sec. 3–807; Middleton v. Pruden, 57 Ga.App. 555, 196 So. 259; Sutton v. Dye, 60 Ga. 449.

rendered this certificate and accepted a new certificate for 23,548 shares; and that the 4187 shares surrendered were issued to McClellan. The record shows, too, the amount of stock issued to Atlanta Laundries, Inc., and the persons to whom the remaining 6100 shares were issued, and that none of these shares were issued to any of the defendants before the court in this suit.

As to the claims made in this suit for the 50,000 shares which were issued to Souers, no reason whatever for impeaching the arrangement by which Souers was to receive these shares for his services was shown. The mere allegation made some twenty years afterward that this action of all the parties, a necessary one in the plan of organizing National, was in fraud of Crescent, is not an allegation of fact sufficient to support the charge, but a mere unfounded conclusion.

The district judge was right in sustaining the motions to dismiss. His judgment is

Affirmed.

RUSSELL, Circuit Judge, concurs in the judgment of affirmance.