145 So.2d 365 (1962)
Mrs. Odile V. Hubert TUCKER as a Stockholder of Crescent City Laundries, Inc., etc.,
v.
NEW ORLEANS LAUNDRIES, INC., Crescent City Laundries, Inc. et al. (two cases).
No. 286.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 1962.
Rehearing Denied October 15, 1962.
Certiorari Denied December 10, 1962.
*366 Richard A. Dowling, New Orleans, and William G. McRae, Atlanta, Ga., for plaintiff-appellant.
Sidney A. Wolff, New York City, Dufour, St. Paul, Levy & Marx, Leonard B. Levy, Lemle & Kelleher, Charles Kohlmeyer, Jr., Herbert S. Weil, New Orleans, Joseph F. Haas, Atlanta, Ga., Milling, Saal, Saunders, Benson & Woodward, H. H. Hillyer, Jr., Deutsch, Kerrigan & Stiles, Rivet & Rivet, Charles J. Rivet, Augusto P. Miceli, Louis A. Pilie, New Orleans, for defendants-appellees.
Before AYRES, DAWKINS and ALLEN, JJ.
JAMES R. DAWKINS, Judge ad hoc.
The two cases before us on this appeal are styled "Mrs. Odile V. Hubert Tucker, *367 Etc. vs. New Orleans Laundries, Inc.", one bearing No. 310-040 on the docket of the Civil District Court in and for the Parish of Orleans, State of Louisiana, and the other bearing No. 315-261 on the docket of said Court. They were consolidated in the trial Court for the purpose of the trial of the exceptions, motions and pleas filed in that Court. Likewise, they have been consolidated in this Court.
After the filing of the two consolidated cases in the District Court and after the exceptions, motions and pleas, now before us, had been decided by the District Judge, the plaintiff, Mrs. Odile V. Hubert Tucker died, and by proper motion, her universal heirs were substituted as plaintiffs. The suits are now being prosecuted by Helen Poladura and Rita Poladura, universal heirs of of Mrs. Odile V. Hubert Tucker, as stockholders of Crescent City Laundries, Inc., on their behalf, and on behalf of others similarly situated, and on behalf of Crescent City Laundries, Inc.
The events which gave rise to the issues now before the Court in these consolidated cases, began in 1928. Since that time, and beginning in 1943, several suits have been filed in both the Federal and State Courts involving various and sundry related matters. For a review of the litigation that has dealt with issues involving the claim of Crescent City Laundries, Inc., hereinafter called "Crescent", to certain stock of the National Linen Service Corporation, see: Kohler v. McClellan, 156 F.2d 908 (5th Cir. 1946); Kohler v. McClellan, 77 F.Supp. 308 (D.C.1948); Kohler v. Humphrey, 174 F. 2d 946 (5th Cir.1949); Tucker v. New Orleans Laundries, Inc., 90 F.Supp. 290 (D.C. 1949); Tucker v. National Linen Service Corporation, 92 F.Supp. 502 (D.C.1950); Tucker v. New Orleans Laundries, Inc., 188 F.2d 263 (5th Cir.1951); Tucker v. National Linen Service Corporation, 188 F.2d 265 (5th Cir.1951); Tucker v. National Linen Service Corporation, 200 F.2d 858 (5th Cir. 1953); Tucker v. New Orleans Laundries, Inc., 238 La. 207, 114 So.2d 866 (La.Sup. Ct., 1959).
After the suits were filed in the Civil District Court for the Parish of Orleans, the various defendants filed certain motions, exceptions and pleas. The trial judge maintained the exceptions of no cause of action and res adjudicata and dismissed the suits. An appeal was taken to the Supreme Court of Louisiana, and the judgment of the trial court was reversed and the cases were sent back for further proceedings. The Supreme Court judgment reversing the judgment of the Court below was filed and made the judgment of the District Court on November 18, 1959.
Thereafter, citations were caused to be issued and served upon certain defendants in No. 315-261 who had not been previously cited and they filed motions to dismiss said case because the plaintiff had allowed more than five years to elapse without having taken any steps to prosecute the action as to them. Other defendants filed pleas or exceptions of prescription and no right of action. All motions and exceptions in both cases were consolidated for trial, evidence was adduced and concluded, and judgment was rendered maintaining the exceptions of no right of action, the various pleas of prescription, and the motions to dismiss the action as to some of the defendants, and the plaintiffs have appealed. The appeal was lodged again in the Supreme Court of Louisiana, but upon the Constitutional change of jurisdiction as to our appellate courts effected in 1960, the transcript was transferred to this Court for our decision.
A full and detailed statement of the facts and circumstances involved in these cases is set out in the opinion written by Justice Hawthorne when the decree relative to the exceptions of no cause of action and res adjudicata was rendered. See Tucker v. New Orleans Laundries, Inc., 238 La. 207, 114 So.2d 866. Thus, we do not deem it necessary to reiterate all of the detailed *368 facts and circumstances involved. It is our opinion that our learned brother of the Civil District Court has succinctly and sufficiently stated the facts necessary for the determination of the issues before the Court, when he stated: "Suit No. 310-040 was filed November 30, 1951. It deals with the organization of National Linen Service Corporation in 1928. It is alleged that of 150,000 shares of common stock issued upon the organization of National Linen Service Corporation, 77,735 shares were due Crescent, of which 54,187 shares were diverted pursuant to a conspiracy alleged in the complaint. It is further alleged (Paragraph 57(d), supplemental petition) that in 1942 the Directors of Crescent entered into a conspiracy with some of the persons, who participated in the 1928 fraudulent diversions, to protect them from having to account to Crescent, and to divert a large portion of Crescent's remaining assets to some of the conspirators.
"It is alleged that the conspiracy included: (1) the formation of a Bondholders' Protective Committee to represent the $1,700,000.00 of bonds of Crescent which had been in default for some years; (2) the foreclosure via ordinaria filed in this Court on April 2, 1942 in Suit No. 244,180 and the confirmation of a default judgment on April 28, 1942; (3) the issuance of a writ of fieri facias to the Sheriff on June 2, 1942; (4) the sale by the Sheriff on July 9, 1942, following alleged fraudulent appraisement and improper advertisement; and (5) the Sheriff's Deed to the Bondholders' Protective Committee on July 10, 1942.
"Suit No. 315-261 was filed July 7, 1952, and is only an attack upon the Sheriff's sale of July 9, 1942, and the Sheriff's Deed as of July 10, 1942. The attack is based upon the same allegations as contained in Suit No. 310-040. This suit seeks recovery of the items described in the advertisement and Sheriff's Deed and in the alternative, the value thereof.
"On July 2, 1943 a stockholders' derivative action was filed in the United States District Court for the Eastern District of Louisiana entitled, `Max N. Kohler vs. Byron C. McClellan, et al.' Civil Action No. 753. This suit was dismissed, and an appeal was taken to the United States Court of Appeal for the Fifth Circuit (156 F.2d 908, July 2, 1946). Rehearing denied August 8, 1946. Certiorari denied329 U.S. 781, 67 Sup.Ct. 203, November 18, 1946.
"On February 3, 1947, Max Kohler filed a second supplemental and amended complaint which is reported in Kohler v. McClellan, 77 F.Supp. 308 (April 21, 1948), affirmed Kohler v. Humphrey, 174 F.2d 946. (January 10, 1949); rehearing denied July 21, 1949. In the second Kohler case Kohler changed his theory from a stockholder's derivative action to an individual tort action, as is evidenced by the holding of Judge Borah in 77 F.Supp. 308, 312 and by Judge Sibley in 174 F.2d 946, 948.
"The first Tucker case (Tucker v. New Orleans Laundries, Inc. et al., United States District Court, Civil Action 2509) was filed August 8, 1949. From the termination of the first Kohler case on November 18, 1946, until the filing of the first Tucker case on August 8, 1949, there was no litigation pending on behalf of Crescent involving the subject matter of this litigation. Since the filing of the first Tucker suit on August 8, 1949, numerous suits have been filed by the plaintiff on behalf of Crescent in both the Federal and State Courts involving the subject matter of this litigation. None of these latter actions is pertinent to the Exceptions pending now."
It is our opinion that the most serious issue raised by the defendants in both of these suits is the right of the plaintiffs to assert the claim that they here attempt to assert, which is the issue raised by the exception of no right of action, for the defendants contend that the claims for the National Linen stock passed to New Orleans Laundries, Inc. by virtue of the Sheriff's sale in 1942. An understanding of the facts as alleged in the petitions (which must be taken as true) is necessary to understand *369 this issue. The District Judge related such facts as follows: "Laundry and Dry Cleaning Service, Inc., the predecessor of Crescent, owned and operated laundries and a linen supply business prior to 1928. In that year National Linen Service Corporation (hereinafter referred to as "National") was incorporated. Immediately upon incorporation, Southern Linen Supply Company, Atlanta Laundries, Inc. and Crescent conveyed their linen supply business to National in consideration of the issuance by it of certain preferred stock and of 150,000 shares of its common stock, constituting the entire issue of common of that company. The stock was issued to voting trustees and voting trust certificates were distributed. It is claimed that a substantial portion (54,187 shares) of the National common stock was diverted to Officers and Directors of Crescent and certain other alleged co-conspirators.
The petitions further allege that to conceal the diversions of the National stock, some of the defendants entered into a conspiracy to wreck Crescent, and to put beyond the reach of any minority stockholder the right to recover for Crescent the improperly and wrongfully diverted National stock.
"It is alleged that bonds amounting to $1,700,000.00 in principal amount were in default in 1942; that the bondholders formed a bondholders' Protective Committee, who then foreclosed via ordinaria on the bonds in this Court in 1942; that Crescent permitted a judgment by default to be rendered against it; that the conspirators then arranged for a Sheriff's sale under a fi. fa. of all of the assets of Crescent, including all choses in action and claims, whether disclosed on the books of the company or not; that they caused the property to be improperly appraised; and that they bought the property in at the sale and thereby vested in themselves the assets of Crescent. All of Crescent's assets were then conveyed to New Orleans Laundries, Inc., also a defendant and named as one of the conspirators, although its corporate existence did not commence until 1942."
It is well to keep in mind that this is a derivative action brought by a stockholder who seeks to assert an action or right belonging to Crescent. If the corporation has voluntarily or involuntarily disposed of its right or cause of action, it has lost its right to assert such right, and the plaintiffs have nothing to assert on its behalf. The exceptors introduced in evidence the Sheriff's sale of July 9, 1942 wherein the Sheriff sold all of Crescent's corporate assets including "other choses in action and claims of any and every character against any and all persons whomsoever". It seems clear that this sale, by description and by intention, divested the corporation and its stockholders of its title or claim to the National stock. See Kohler v. McClellan, 156 F.2d 908; Tucker v. New Orleans Laundries, Inc., 188 F.2d 263; and Tucker v. National Linen Service Corp., 200 F.2d 858.
Plaintiffs seek to avoid the effects of the sale by contending that the sale was null, and that the sale was not intended to cover the claim for the alleged fraudulent conversion of the National shares, but such argument is not in keeping with the pleadings or the evidence, and no sufficient reason has been assigned authorizing the plaintiffs to nonchalantly hurdle the laws relating to judicial sales.
A review of the record in the suit wherein the assets of Crescent were sold at Sheriff's sale, shows nothing irregular or improper in those proceedings. The bonds of Crescent had been in default for about ten years and created a valid indebtedness against the corporation. The holders of those bonds amounting to $1,700,000.00 filed suit by ordinary process on them. In due course, and after all delays had elapsed, a valid judgment was rendered, a due and legal writ of fi. fa. was issued, and the assets of Crescent were seized, and after due advertisement, were sold at public auction. *370 Neither Mrs. Odile V. Hubert Tucker, who was a former employee of Crescent and a stockholder in the corporation, nor any other person made any defense to the foreclosure and sale of Crescent's assets, and plaintiffs have not pointed out to us what they propose to do about the valid claim of the holders of the defaulted bonds in the event they should be successful in these actions.
We note in reviewing the records in these cases, that the trial Judge observed that in the argument before him, plaintiff's counsel repeatedly admitted that his case must stand or fall upon the validity or non-validity of the Sheriff's sale. We note also, that in the very detailed opinion of Justice Hawthorne, there is the statement, "Plaintiff apparently realizes that it is necessary to have the Sheriff's sale set aside, and she alleges numerous grounds for its invalidity." Likewise, in the case of Kohler v. McClellan, 156 F.2d 908, in which the opinion was written by Judge Elmo Lee, a former Louisiana lawyer before his appointment as a Judge of the United States Court of Appeal, it was recognized that the plaintiffs must annul and set aside the Sheriff's sale in order to recover, when he stated:
"The original and supplemental petitions make it plain that on July 9, 1942, `all the debtor['s] [Crescent's] choses in action and claims of any and every character against any and all persons whomsoever, whether or not shown upon the books of the debtors, and all of the debtor['s] cash, assets and effect of every name, character and description' were sold at public outcry by the civil sheriff of Orleans Parish, Louisiana, under a writ of fieri facias issued upon a money judgment against Crescent; that an attorney at law in New Orleans bought in the properties at the auction sale and transferred them to N. O. Laundries, Inc., a Louisiana corporation; and that title to all the claims against the defendants except those against B. C. McClellan and associates for their alleged fraudulent and illegal acts in connection with the sale passed to N. O. Laundries, Inc. Appellant, however, argues that the seizure and sale of all of Crescent's choses in action and claims under the general description quoted above were made under too vague and indefinite a description to give notice of specific rights and credits seized or specific rights and credits sold; hence, that all choses in action and claims remained, following the seizure and sale, the property of Crescent, and are still its property, including the claims asserted against defendants in this suit. The descriptive words of the property seized and sold clearly show an intent to seize and sell all of the assets of Crescent of every kind and character. As between the parties to the sale, Crescent and purchaser, where it was purposed to seize and sell all assets, a general description broad enough to cover all assets was sufficient. * * *"
We concur with these conclusions. Thus, if the Sheriff's sale of 1942 had the effect of conveying to the purchaser all of the property, rights and actions belonging to Crescent, then the right which the plaintiffs here seek to exercise is not vested in them but in others, and until such transfer is annulled and set aside by appropriate action, these plaintiffs have no right of action, and the trial Judge was correct in maintaining that exception as to all of the parties to whom it applied. These circumstances placed the plaintiffs in the position of having lost their cause of action unless the Sheriff's sale could, in some way, be avoided. They could (1) either couple an action of nullity of the sale with the action for the conversion of the National stock, or (2) treat the Sheriff's sale as an absolute nullity and sue for the recovery of the stock without praying that the sale be annulled. If, however, the judicial sale is merely relatively, not absolutely, null, and the plaintiffs failed to seek or pray for its *371 nullity, then they can take nothing by their action. See Belard v. Gebelin, 46 La.Ann. 326, 14 So. 843; Bankston v. Owl Bayou Cypress Co., 117 La. 1052, 42 So. 500; Reid v. Federal Land Bank of New Orleans, 193 La. 1017, 192 So. 688; Pryor v. Desha, 204 La. 575, 15 So.2d 891; Acosta v. Whitney National Bank, 214 La. 700, 38 So.2d 391.
In the cases before us, the plaintiffs did not pray for the nullity of the Sheriff's sale, but charged that it "was ineffective to convey" Crescent's property to the purchaser. They seek to hurdle or ignore said sale, which, in effect, is to assert its absolute nullity, for only absolutely null judicial sales may be ignored or hurdled. Consequently, unless the claimed "nullities" are, in law, absolute, the sale stands and it must be held that it passed the claim here asserted to the purchaser, and the plaintiffs now have no right of action.
The exceptions of no right of action were tried and must be determined under the provisions of the Louisiana Code of Practice, for the new Code of Civil Procedure had not been adopted when the exceptions were filed and tried. Article 607 of the Louisiana Code of Practice provides as follows:
"A definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud, or other ill practices on the part of the party in whose favor it was rendered; as if he had obtained the same by bribing the judge or the witnesses, or by producing forged documents, or by denying having received the payment of a sum, the receipt of which the defendant had lost or could not find at the time, but has found since the rendering of the judgment."
The fraud which forms the basis for the annulment of a judgment under this Article refers to a fraud practiced upon the Court and certainly there are no allegations contained in the plaintiffs' petition which charge that fraud was practiced on the Court in the foreclosure proceeding leading up to the Sheriff's sale. In fact, the District Judge stated in his opinion that he had reviewed the record in that suit and found it to be proper and in legal form. In the case of State ex rel. Pelletier v. Sommerville, Judge et al., 112 La. 1091, 1099, 36 So. 864, dealing with Article 607 of the Code of Practice, the Court stated:
"Its purpose is to provide relief against fraud which has operated in the obtention of a judgment which makes no appearance in the record, and for which an appeal would afford no remedy."
In the case before us, there is and can be no doubt but that the bonds of Crescent were in default; that a legal action was filed by the holders of the bonds seeking, by ordinary process, a judgment for the amount due; that, in due course, judgment was rendered; that the assets of Crescent were seized; and that, after due advertisement such assets were sold at public auction. No fact nor circumstance involved in the case indicates fraud, actual or otherwise practiced upon the Court.
This brings us to a consideration of the charges and irregularities alleged by the plaintiffs against the judgment and the Sheriff's deed. The nullities asserted by plaintiffs are: (1) Lack of sufficient description in Item 37 of the judicial sale, (2) the sale was part of a fraudulent conspiracy to divest Crescent of its assets, (3) the sale was made for less than one-half of the value of the assets, (4) no appraisal, or at least no proper appraisal was had, (5) improper advertisement due to faulty description, (6) improper seizure due to faulty description in the notice of seizure.
Each of the charged causes for the nullity of the Sheriff's sale represent, at most, a relative nullity, and although they may have constituted causes for annulling and setting aside the sale, none would constitute an absolute nullity, nor afford the plaintiffs the right to ignore or circumvent it.
*372 As to the lack of a sufficient description, it was held in Williams v. Bowie Lumber Co., 214 La. 750, 38 So.2d 729, that a general description of the property is valid as between the parties and, in fact, the very description which is attacked in this case was held to be legally sufficient in the case of Kohler v. McClellan, 156 F.2d 908.
The charge made by plaintiffs of a fraudulent conspiracy to defraud Crescent of its assets promoted by the defendants, could, at best, render the judicial sale to be a relative nullity, not an absolute nullity. See Article 1881 LSA-Civil Code; Article 2619, LSA-Civil Code; Ford v. Douglas, 5 How. 143, 12 L.Ed. 89.
It is well settled by the law of this State that lesion is not a ground for annulling a Sheriff's sale made under the execution of a judgment. See D'Arensbourg v. Chauvin & Levois, 9 La.Ann. 98.
An improper, or in fact, a complete lack of an appraisal of the property creates a mere relative nullity which is cured by the prescription of five (now two) years. Thibodaux v. Barrow, 129 La. 395, 56 So. 339; Phoenix Building & Homestead Ass'n v. Meraux, 189 La. 819, 180 So. 648.
The matter of improper advertisement or a faulty description in the advertisement does not render a Sheriff's sale an absolute nullity, but is a defect which is cured by the prescription of five (now two) years. See Phoenix Building & Loan Ass'n v. Meraux, supra; Louaillier v. Castille, 14 La.Ann. 777.
An improper seizure due to faulty description in the notice of seizure, as charged by the plaintiffs in their petition, if true, is nothing more than a relative nullity which is cured by the prescription of five (now two) years. Foreman v. Francis, Man. Unrep. Cas. 337; Morris v. Foster, 192 La. 996, 189 So. 601.
Although the plaintiffs do not pray that the Sheriff's sale be annulled, and cannot obtain relief for which they have not prayed, the attacks which they do level at said judicial sale are prescribed against by the prescription of two years, and the defendants have filed such a plea as a bar to the attack made thereon. The District Court maintained the pleas of two and five years prescription, against plaintiffs' attack upon the sale.
The law appropriate for application in this connection is set out in LSA-Civil Code, Article 3543. This Article "is a statute of repose, intended to quiet titles, and to create confidence in judicial titles, at least, after the lapse of this ample and reasonable time." Munholland v. Scott, 33 La.Ann. 1043, 1045, 1046. In addition to the above numbered Article of the LSA-Civil Code, LSA-R.S. 9:5642 provides for a five-year prescription against actions to set aside Sheriff's deeds, conditioned upon the owner knowing that the Sheriff was proceeding to sell his property, and upon the purchaser going into actual, open and peaceable possession of the property, and the Sheriff having received and paid the proceeds of the sale to the creditors of the real owner. The facts relating to the Sheriff's sale of 1942 meet all of the requirements of LSA-R.S. 9:5642.
The Sheriff's sale took place on July 9, 1942. On July 2, 1943 the Kohler derivative action was filed and its dismissal became final when the United States Supreme Court denied certiorari on November 18, 1946. The second Kohler suit was not a derivative action. Thereafter, the first derivative suit was the Tucker action filed in the United States Court on August 8, 1949. The New Orleans Laundries, Inc., now owner of all the property sold at Sheriff's sale, was not named as a defendant in either of the Kohler cases, but was first named as a defendant in the first Tucker suit in 1949. Louis Knop, the Civil Sheriff who made the sale, is not *373 sued in suit No. 310-040, and was not served in suit No. 315-261 until 1960. Thus, it seems clear that the provisions of Article 3543 of the LSA-Civil Code and LSA-R.S. 9:5642 apply and are effective bars against the attack made upon the 1942 Sheriff's sale.
The affirmation by us of the trial court's decree maintaining the exception of no right of action and the pleas of two and five years prescription against attack upon the Sheriff's sale might be determinative of all of the issues of the cases, except for the fact that some of the defendants filed motions to dismiss the suits for want of prosecution under Article 3519 of the LSA-Civil Code of Louisiana, which provides that, "whenever the plaintiff having made his demand shall at any time before obtaining final judgment allow five years to elapse without having taken any steps in the prosecution thereof, he shall be considered as having abandoned the same." These motions, filed on behalf of some defendants, were sustained by the trial judge and the action, as to those defendants, was dismissed prior to the judgment of the Court which sustained the exception of no right of action and dismissed the suits as to all defendants. Thus, it becomes necessary to decide whether or not the trial court was correct in maintaining the motions to dismiss for want of prosecution.
There were a number of parties in the suit which bore No. 315-261 who were named as defendants in the petition, but upon whom no citation issued for more than five years thereafter. The plaintiffs contend that since the suit was dismissed by judgment of the Court in February of 1954 against an indispensable party, and then as to all defendants, they were precluded from taking any further action, pending an appeal from that judgment. We fail to see how the rendition of a judgment against one defendant, followed by an appeal to which other defendants are not parties, would prevent the plaintiff from proceeding against another defendant in the case. Here the plaintiff filed her suit but no citation was served on some defendants for more than five years. We believe it is well settled law of this State that the demand referred to in Article 3519, LSA-Civil Code of Louisiana, means the filing of the suit or petition, not from the time that citation issued. In fact, the fundamental purpose of Article 3519 was to "put an end to the then prevailing practice of filing suit to interrupt prescription, and then letting the suit hang perpetually over the head of the defendant unless he himself should force the issue."
Augusta Sugar Co. v. Haley, 163 La. 814, 112 So. 731. Therefore, it is our opinion that the judgment of the trial court maintaining the motions to dismiss for lack of prosecution as to the defendants involved, was correct.
In addition to the issues which have been reviewed above, some of the defendants filed various other pleas of prescription. They plead and asserted the acquisitive prescription of ten years as to the voting trust certificates issued in 1928 to various persons. The Court below held that these persons held title to the voting trust certificates in absolute ownership; that it was not precarious; and since no attack thereon was made for more than ten years, such parties had become the owners thereof by the acquisitive prescription of ten years. Several defendants also urged the liberative prescription of one and ten years. We do not deem it necessary to decide the issues raised by these pleas of prescription, since the conclusions which we have reached are sufficient to affirm the judgment of the District Court.
For the reasons herein assigned, the judgment of the Civil District Court in and for the Parish of Orleans, State of Louisiana, is affirmed at appellant's cost.
Affirmed.