964 F.2d 305
 Virginia BAUER; Charles E. Corbett; Lorraine B. Corbett;
Carl A. Grover; Mary M. Grover; Ralph T. Haile, Jr.; Otis
Allen Jeffcoat, III; W.H. Olive, Jr.; Eloise S. Plyler;
Joan B. Thompson; H. Erwin Thompson; George H. Wall;
Justin W. Plyler; Mary Muthig Jeffcoat, As Individuals
and/or Shareholders of SeaBank Savings, FSB, Plaintiffs-Appellants,
v.
William O. SWEENY, Jr.; James E. Tyson; Cephus W. Long;
George D. Taylor; Mark C. Garner; William H. Alford, As
Individuals and as Directors of SeaBank Savings, FSB;
Robert N. Swiger, Individually and as President, C.E.O. &
Director of SeaBank Savings, FSB; John L. Sweeney,
Individually and as agent for certain directors of SeaBank
Savings, FSB; Deloitte, Haskins & Sells; Resolution Trust
Corporation, Defendants-Appellees,
and
B.L. Randolph, Individually and as Vice President and
Treasurer of SeaBank Savings, FSB; Bradley
Filiault, Individually and as Assistant
Vice President of SeaBank
Savings, FSB, Defendants.
 No. 91-2500.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 29, 1991.
Decided May 4, 1992.
As Amended Sept. 3, 1992.
 
 James Jay Kaufman, Barefoot & Kaufman, Wilmington, N.C., argued (James C. Rushton, III, The Hyman Law Firm, Florence, S.C., on brief), for plaintiffs-appellants.
 John Randolph Pelzer, Pelzer & Associates, P.A., Charleston, S.C., argued (Rogena Snipes, Sr. Atty., Professional Liability Section, Holly A. Hamilton, Legal Div., Resolution Trust Corp., Atlanta, Ga., Kathleen Flake, Sharon D. Zissman, Resolution Trust Corp., Washington, D.C., Jefferson B. Aiken, III, Coleman, Aiken & Chase, Florence, S.C., Robert W. Dibble, Jr., McNair Law Firm, James W. Alford, Barnes, Alford, Stork & Johnson, Columbia, S.C., Henrietta U. Golding, Howell V. Bellamy, Jr., Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., Myrtle Beach, S.C., Edward C. Winslow, III, James T. Williams, Jr., Mack Sperling, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., on brief), for defendants-appellees.
 Before ERVIN, Chief Judge, LUTTIG, Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.OPINION
 RESTANI, Judge:
 
 
 1
 This case is before the court following the district court's dismissal of the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
 
 
 2
 The sole issue on appeal is whether the district court correctly concluded that shareholders of a failed savings bank do not have standing to bring a derivative action against former officers and directors because the bank's claims have been assigned to the Resolution Trust Corporation.[1]
 
 Background
 
 3
 On April 27, 1989, SeaBank Savings, F.S.B. ("SeaBank"), a federally chartered savings bank located in Myrtle Beach, South Carolina, was placed into conservatorship. On September 20, 1989, SeaBank was placed in receivership and the Resolution Trust Corporation ("RTC") was appointed receiver.[2] RTC then transferred SeaBank's rights to sue its former officers, directors, and others to a new entity, SeaBank Federal Savings Bank, F.S.B. ("SeaBank Federal").
 
 
 4
 On December 19, 1989 SeaBank Federal was closed by the Office of Thrift Supervision, and again RTC was appointed receiver. RTC, in its capacity as receiver ("RTC-Receiver"), sold to RTC, in its corporate capacity ("RTC-Corporate"), SeaBank's potential claims against its officers, directors, and other employees. This contract of sale was dated December 19, 1989.
 
 
 5
 Appellants are shareholders of SeaBank. Their derivative action alleges breaches of various duties by former directors, officers, employees, attorneys, and accountants of SeaBank.
 
 
 6
 On March 7, 1991, the district court granted a motion to dismiss the complaint for failure to state a claim. The court held that the claims against former directors, officers, and other employees belong exclusively to RTC-Corporate, as purchaser for value of SeaBank's choses in action. Thus, the trial judge reasoned, RTC-Corporate has the sole right to prosecute potential claims.
 
 Discussion
 
 7
 The American Bank cases[3] have application to the case at hand. In American Bank I, the Federal Deposit Insurance Corporation ("FDIC")[4] was appointed receiver for American Bank & Trust ("the bank"). As in the case at bar, FDIC, the receiver, then sold all claims and causes of action to FDIC, the corporation. FDIC filed suit against the bank, seeking a declaratory judgment that it owned all the causes of action for harm or wrong done to the bank. Bank shareholders launched a derivative suit against former officers and directors of the bank. The district court stayed the derivative suit pending the outcome of the suit for declaratory judgment. The district court then found that:
 
 
 8
 It is well settled ... that causes of action for losses sustained because of the mismanagement and negligence of directors, officers, and employees of a bank belong to the bank itself ... and in the event of its liquidation, such causes of action are vested in its receiver; and may be conveyed and sold as any other asset [citations omitted].
 
 
 9
 . . . . .
 
 
 10
 FDIC, the corporation, duly purchased for value any cause of action of ... [the bank] from FDIC, the Receiver ... [quoting from Brown v. New York Life Ins. Co., 152 F.2d 246 (9th Cir.1945) ] "Among the assets so purchased by and assigned to the FDIC was the Bank's claim [against certain officers and directors].... FDIC acquired its cause of action herein as a purchaser for value by express contract with the Bank.... [W]hatever right of action the FDIC acquired, it acquired through this purchase and assignment. We view this a transaction for value, and so hold."
 
 
 11
 American Bank I, 412 F.Supp. at 306. The court further found that: "To the extent such causes of action [alleged mismanagement by former officers and directors] are for harm done to ... [the bank], FDIC, the Corporation, is the owner of, and sole party entitled to assert, such causes of action." Id. at 308.
 
 
 12
 On appeal, the appellate court stated: "We see no error in the district court's determination that FDIC acquired apparent title to all choses in action against officers, directors and employees of [the bank]." American Bank I, 558 F.2d at 714. The court, however, vacated and remanded the case to the district court for a determination as to the validity of FDIC's appointment as receiver and the legitimacy of the sale of the causes of action. Id. at 715. On remand, the district court examined the manner and method whereby FDIC acquired title to the causes of action, once again reaching the conclusion that "FDIC is the owner of all derivative causes of action." American Bank II, 460 F.Supp. at 561. This decision was affirmed on appeal. American Bank II, 629 F.2d at 953. The validity of RTC's appointment as receiver and the legitimacy of the December 19, 1989 contract of sale are not at issue here.
 
 
 13
 In this case, the district court discussed the American Bank cases extensively and found them to be determinative. The district court also stated, however, that the case of Womble v. Dixon, 585 F.Supp. 728 (E.D.Va.1983), aff'd in part, vacated in part and remanded, 752 F.2d 80 (4th Cir.1984), contained language which seemed to conflict with the reasoning contained in the American Bank cases. The district court reconciled the statement in Womble that, "A derivative action is not precluded simply because a bank, or a savings and loan association, is placed in receivership...." (quoting Womble, 585 F.Supp. at 731), with the American Bank cases by limiting this proposition to situations in which the bank still owns the causes of action the shareholders seek to assert or in which the receiver manages the bank's assets. This distinction is well made.
 
 
 14
 In Womble, FSLIC did not challenge the shareholders' standing, as the parties did here. In Womble, the issue before the court was whether shareholders lacked standing "because they failed to demonstrate under Rule 23.1 [Fed.R.Civ.P.] that the FSLIC refused to assert a right it properly could have asserted."[5] Womble, 585 F.Supp. at 731.
 
 
 15
 In the case at hand, SeaBank Federal's rights to pursue claims were sold to a third party, RTC-Corporate, for consideration. As consideration for the sale and assignment by RTC-Receiver to RTC-Corporate, RTC-Corporate agreed to provide certain indemnities, discharge certain duties of the receiver, and pay the receiver any amount recovered in excess of the costs of liquidation and a reasonable return. Plaintiff shareholders, while they might have some distant interest in a recovery of funds, do not have standing to pursue this action. Derivative rights of shareholders are lost after claims are sold. See Tucker v. New Orleans Laundries, 145 So.2d 365, 369 (La.App.1962) ("[where] the corporation has voluntarily or involuntarily disposed of its right or cause of action, it has lost its right to assert such right, and the plaintiffs [shareholders] had nothing to assert on its behalf."); see also Crossland v. Canteen Corp., 711 F.2d 714, 720 n. 3 (5th Cir.1983) (derivative suit "presupposes that the corporation has a right for the shareholder to enforce"). Accordingly, a sale for value of claims to a third party precludes a derivative action by shareholders with regard to such claims.
 
 Conclusion
 
 16
 On December 19, 1989, the assets and claims of SeaBank were sold by RTC-Receiver to RTC-Corporate. The shareholders received consideration for the sale of claims and appellants do not challenge the legality of the sale.
 
 
 17
 We affirm the district court's finding that the American Bank cases are controlling on the facts of this case and the shareholders of the former owner of the causes of action at issue lack standing to pursue this action.
 
 
 18
 AFFIRMED.
 
 ERVIN, Chief Judge, dissenting:
 
 19
 I respectfully dissent.
 
 
 20
 While I do not dispute that the majority's analysis is a permissible interpretation of the law of this circuit, I do not believe that the result reached by the majority is dictated by our prior decisions. Specifically, I believe that there exists an equally viable, but narrower, interpretation of the American Bank decision which, if adopted, would entirely distinguish the present set of facts from that case. Consideration of the equities of this case and the broader public policy ramifications of our decision compels me to support this alternative interpretation.
 
 
 21
 As the majority points out, the key language of the American Bank decision, for purposes of this case, is in the initial opinion of the district court which, after remand on other grounds, was ultimately affirmed by this court. Holding that the shareholders of the bank were not entitled to assert derivative claims following a legitimate transfer of the underlying causes of action from the bank to the FDIC, the district court stated that the FDIC was "the owner of, and sole party entitled to assert, such causes of action." 412 F.Supp. at 308 (emphasis added). While this language would facially appear to have direct application in the present case, the holding of American Bank cannot be divorced from the context of that litigation.
 
 
 22
 In American Bank, the FDIC had initiated, and was actively pursuing, litigation based on the causes of action which had been transferred to it by the bank. During the pendency of the FDIC's actions, shareholders of the bank sought to commence derivative actions based on identical claims. The district court's ruling in American Bank was made in response to a motion for declaratory judgment by the FDIC for a determination by the court that the FDIC was the sole party entitled to proceed with the litigation. In this context, the district court's finding that the FDIC was the "sole" party entitled to assert the claims need not necessarily be read as a ruling that the shareholders' derivative actions had been destroyed by the transfer of the underlying claims to the FDIC. I submit that an equally viable interpretation of the statement is that, in light of the FDIC's active pursuit of the claims, the bank's shareholders were not entitled to simultaneously proceed with their derivative action. This interpretation is strengthened by the district court's accompanying order which directs the FDIC to "initiate all proper causes of action ... as soon as reasonably practicable." Id. at 309.
 
 
 23
 Under this reading of the decision, American Bank does not bar the shareholders' suit in the present case. The RTC has failed, to date, to pursue the claims in question. The RTC indicated in its submissions to the trial court that it intended to take action or decline to take action within 180 days. As of the oral argument in this case, however, nearly eight months after the district court's decision, the RTC asserts only that it "is investigating the actions of the directors, officers and professionals of SeaBank." Appellee's Br. at 4. Unless and until the RTC decides to pursue its claims, American Bank, under the more narrow construction proposed above, does not preclude a derivative action.
 
 
 24
 I am equally unpersuaded by the cases cited by the majority from outside this circuit. Crossland merely stands for the unremarkable proposition that a losing legal claim of a corporation cannot successfully be pursued derivatively by one of its shareholders. See 711 F.2d at 720-21. Tucker, from a Louisiana state appellate court, cites no authority to defend its conclusory holding that a corporation's voluntary or involuntary disposal of a cause of action deprives its shareholders of the right to derivatively assert that claim. See 145 So.2d at 369.
 
 
 25
 I would hold that this case is governed by the law of assignment. A bedrock principle of assignment law is that an assignment can create no greater rights in the assignee than were possessed by the assignor. See, e.g., DuPont de-Bie v. Vredenburgh, 490 F.2d 1057, 1061 (4th Cir.1974). In the present case, RTC-Receiver held possession of SeaBank's potential causes of action against its officers, directors, and other employees. These claims were limited, however, in the sense that they were subject to derivative enforcement by SeaBank's shareholders. See Womble v. Dixon, 752 F.2d at 82; Landy v. FDIC, 486 F.2d 139, 148 (3d Cir.1973) ("A derivative suit by shareholders should not be precluded merely because a bank is in ... receivership."), cert. denied, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).
 
 
 26
 The majority opinion asserts that the sale of SeaBank's causes of action from RTC-Receiver to RTC-Corporate extinguished the shareholders' derivative rights. However, this would mean that RTC-Corporate, the assignee, attained by the transaction claims that were unencumbered by the limitation imposed on RTC-Receiver, the assignor. This result violates the fundamental assignment principle expressed in DuPont de-Bie in a manner which I am unprepared to accept.
 
 
 27
 Turning to the equities of the case, I discern no negative consequences in allowing the shareholders to go forward with their derivative suit when RTC-Corporate, the owner of the underlying claims, has decided, for whatever reason, not to pursue them. The trial judge referred to this as the shareholders' desire to "have their cake and eat it, too," i.e., receive consideration for the sale of the causes of action, and then profit from the independent pursuit of the claims. However, under the terms of the contract of sale of the claims, SeaBank receives the excess over a certain figure of any recovery made by the RTC against the officers, directors or employees of the bank. It is reasonable to assume that SeaBank bargained for this consideration with the expectation that all legitimate causes of action would be fully litigated. Allowing the bank's shareholders to seek their day in court on those claims they believe to be legitimate, but which the RTC has failed to pursue, merely ensures that SeaBank receives the full measure of the consideration for which it bargained.
 
 
 28
 I note also that any recovery obtained by the shareholders as a result of the derivative action will accrue to the benefit of SeaBank. The shareholders will not personally profit until all outstanding claims of creditors of the bank have been satisfied. It seems to me to be good public policy to allow private individuals to expend their own resources to recover funds that will reduce the insolvency of a federally insured institution.
 
 
 29
 A final argument against the majority's position involves the nature of derivative actions. A shareholders' derivative suit is a device designed to allow the owners of a corporation to bring claims on behalf of the company that the company's management is unwilling to bring (frequently, as in this case, because the claims are against directors or officers of the corporation). Accordingly, it is illogical to adopt the majority's position and permit the sale of a cause of action, a decision fully within the discretion of the management, to deprive the shareholders of their right to bring a derivative action. Granting management the power to extinguish unilaterally the shareholders' derivative rights fails to acknowledge the role of the derivative action in maintaining managerial accountability.
 
 
 30
 For the foregoing reasons I would hold that, as long as a corporation remains in existence, the corporation's assignment of legal claims to another entity does not deprive shareholders of that corporation from asserting those claims derivatively if the owner of the claims fails to do so directly. In this case, I would hold that unless and until RTC-Corporate decides to pursue the actions against SeaBank's directors, officers and other employees, SeaBank's shareholders have the right to derivatively pursue the claims.
 
 
 
 [1]
 This opinion does not address the question of whether the Resolution Trust Corporation may assign its rights in the cause of action at issue to the shareholders
 
 
 [2]
 On August 9, 1989, RTC was established to replace the Federal Savings and Loan Insurance Corporation ("FSLIC") pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. See 12 U.S.C.A. § 1441a(b)(6) (West Supp.1991). The purpose behind the establishment of the RTC was to "contain, manage and resolve failed savings associations." Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, § 101, 103 Stat. 183, 187, 1989 U.S.Code Cong. & Admin.News. RTC possesses, with certain exceptions, all of the receivership and conservatorship powers and duties of the Federal Deposit Insurance Corporation ("FDIC"). See 12 U.S.C.A. § 1441a(b)(4) (West Supp.1991). In acting as a conservator or receiver, FDIC and RTC are directed, inter alia, to "preserve and conserve the assets and property" of the failed savings institution. See id. at § 1821(d)(2)(B)(iv) (1989). RTC also must "maximize the net present value return from ... the assets" of the insolvent institution. Id. at § 1441a(b)(3)(C)(i) (West Supp.1991)
 
 
 [3]
 FDIC v. American Bank Trust Shares, Inc., 412 F.Supp. 302 (D.S.C.1976), vacated and remanded on other grounds, 558 F.2d 711 (4th Cir.1977) ("American Bank I "), on remand, 460 F.Supp. 549 (D.S.C.1978), aff'd, 629 F.2d 951 (4th Cir.1980) ("American Bank II ")
 
 
 [4]
 As noted by the district court, FDIC and RTC are authorized to operate in both receiver and corporate capacities. Compare 12 U.S.C. § 1441a(b) (West Supp.1991) (RTC) with 12 U.S.C. §§ 1821-23 (1989) (FDIC)
 
 
 [5]
 Rule 23.1 states that in a derivative action, the shareholder must establish that the corporation failed to enforce a right which it properly could have asserted. Fed.R.Civ.P. 23.1. The district court in Womble addressed the issues of whether the shareholders had made proper demand on FSLIC and whether FSLIC should be removed as receiver because of an alleged conflict of interest